STATE *EX RELATIONE* FOUCHE v. VERNER.

1. Under an act constituting three members of the executive department of the State government a board to approve or disapprove applications for pension, the duty imposed upon this board requires the exercise of judgment or discretion, and is not merely ministerial. Therefore, after this board has acted by refusing to approve an application for pension, the court cannot, by writ of mandamus, command them to approve it.

2. By an act passed in 1887, a pension was given to the widows of deceased Confederate soldiers "while she remains unmarried." A widow of a soldier, who died in service, having in 1866 remarried a second husband (who died in 1877), she is not entitled to a pension, under this act, as the widow of her first husband.

This was an application for mandamus, submitted to this court in its original jurisdiction. The opinion states the case.

*Messrs. Benet & McGowan,* for relator.

*Mr. Earle,* attorney general, contra.

March 7, 1889. The opinion of the court was delivered by

MR. JUSTICE MCIVER. By this petition, this court is asked, in the exercise of its original jurisdiction, to issue a writ of mandamus, directed to John S. Verner, as comptroller general, Joseph H. Earle, as attorney general, and J. Q. Marshall, as secretary of State, requiring them to approve the application of the petitioner for a pension, under the provisions of the act of December 24, 1887 (19 *Stat.*, 826), entitled "An act to provide for the relief of certain soldiers, sailors, and widows of soldiers or sailors of the late war between the States." This act, after prescribing the conditions upon which relief may be obtained, and the manner in which applications therefor shall be made, in the seventh

section provides that the public officers above specified "shall constitute a board to approve or disapprove such applications," and then provides how pensions are to be paid to persons whose applications have been approved by the said board.

The facts upon which the petitioner bases her claim for a pension are undisputed, and, so far as necessary to be stated for the purposes of this case, are as follows: That she was the lawful wife of one William MacCole, who lost his life while in the military service of the Confederate States, during the recent war between the States, on March 24, 1863; that in August, 1865, she intermarried again with one Benjamin F. Fouche, who died in September, 1877, leaving no property.

Under this state of facts, petitioner contends that she is still the widow of said MacCole, and as such entitled to a pension under the provisions of section 8 of the above mentioned act. That section reads as follows: "The widow of any soldier or sailor from the State of South Carolina, now residing in this State, who lost his life while in the service of the State or Confederate States, in the war between the States, while she remains unmarried, shall be entitled to receive the benefit of this act, subject to the same conditions as to property and income as hereinbefore provided, and may make her application setting forth in detail the facts which entitle her to make such claim, and verified by affidavits and certificates hereinbefore provided, except the affidavits of physicians; and upon the approval of her claim, such widow shall be entitled to receive the same amount and in the same manner as hereinbefore provided."

The respondents in their return admit that they, acting as the pension board constituted by said act, "did disapprove the application of the petitioner for pension, on the ground that she has remarried and is not now the widow of William MacCole, and they submit that it was their duty as such pension board to disapprove said application under the terms of the act of the general assembly above set forth." From this, it is apparent that the real controversy between petitioner and the respondents is as to the proper construction of the 8th section of the act above quoted; and this being so, the first question to be determined is whether this is a proper case for mandamus. It is true, this question is

not raised by the respondents, either in their return or in argument ; but as this is a case presented to this court in the exercise of its original jurisdiction, it seems to us that we are bound to consider it before ordering the writ asked for to be issued.

The general rule is, that mandamus goes to a public officer to enforce the performance of some plain ministerial duty, but not for the purpose of controlling or guiding his judgment or discretion. It may be used for the purpose of requiring the officer to act, but it cannot be used for the purpose of directing him *how* to act in the performance of a duty involving the exercise of judgment or discretion. In *Moses on Mandamus*, 78, the author, after stating that the principles which apply in cases of mandamus to the heads of the various departments of the executive branch of the federal government, are also applicable to cases of mandamus to all other officers of the government, states the rule thus : "It cannot issue in a case where discretion and judgment are to be exercised by the officer, nor to control him in the manner of conducting the general duties of his office; it can be granted only where the act required to be done is imposed by law—is merely ministerial, and the relator without any other adequate remedy." So in *High on Ex. Rem.*, section 62, quoted with approval in *Ex parte Barnwell* (8 S. C., at page 271), the rule is stated as follows : "That in all matters requiring the exercise of official judgment, or resting on the sound discretion of a person to whom a duty is confided by law, mandamus will not lie, either to control the exercise of the discretion or determine upon the decision which shall be formally given."

The rule thus laid down by these text writers is fully supported by the decisions in the Supreme Court of the United States as well as in this State. In *Decatur* v. *Paulding* (14 Peters, 497), the widow of Commodore Decatur claimed a pension not only under the general law, but also under a special resolution of Congress, and the secretary of the navy, whose duty it was to pass upon applications for pensions, refused to allow her a pension under both the general law and the special resolution. She applied for a mandamus to compel him to do so, and the court held that a mandamus could not be issued to compel the secretary of the navy to perform an executive act not merely ministerial, but

involving the exercise of judgment. Taney, C. J., delivering the opinion of the court, in speaking of the nature of the duties imposed upon the secretary of the navy in relation to this matter, says: "He must exercise his judgment in expounding the laws and resolutions of congress, under which he is from time to time required to act"—and adds that the court cannot, by mandamus, "act directly upon the officer, and guide and control his judgment or discretion in matters committed to his care in the ordinary discharge of his official duties."

This appears to be a leading case, and has been repeatedly recognized and affirmed in many subsequent cases, amongst which may be mentioned *Brashear* v. *Mason*, 6 How., 92; *United States* v. *Seaman*, 17 *Id.*, 225; *United States* v. *Guthrie, Ibid.*, 284; *Gaines* v. *Thompson*, 7 Wall., 347. And in *Litchfield* v. *The Register and Receiver of U. S. Land Office* (9 Wall., 577), Mr. Justice Miller says that the principle has been so repeatedly decided that it must now be regarded as settled. The same doctrine has been held in this State. *State* v. *Bruce*, 1 Tr. Con. R., 165; *Grier* v. *Shackelford*, 2 *Id.*, 642; *Morton, Bliss & Co.* v. *Comp. General*, 4 S. C., 430; *Ex parte Barnwell, supra;* and *Ex parte Lynch*, 16 S. C., 32.

The counsel for petitioner has, however, cited three cases to show that this is a proper case for mandamus, viz., *State* v. *Hagood*, 13 S. C., 46; *State* v. *Com'rs of Pilotage*, 23 *Id.*, 175; and *State* v. *Courtenay, Ibid.*, 180. In the first place, it will be observed that in each one of these cases the application for mandamus was refused, and, therefore, whatever may have been said in regard to the point now under consideration, can scarcely be regarded as an authoritative decision. But waiving this, let us see if either of these cases support the position which they are cited to sustain. In the first case—*State* v. *Hagood*—the question was not raised or even alluded to; and in the last case—*State* v. *Courtenay*—the question was not discussed, but the court simply referred to the preceding case.

So that we have only to consider the decision in the case against the commissioners of pilotage. In that case, the application was for a mandamus to compel the commissioners of pilotage to vacate an order which they had made, suspending the relator

as pilot of the port and harbor of Port Royal, upon the ground that the charge upon which the relator was suspended was not of such a character as authorized his suspension. The application was, in effect, based upon the ground that the commissioners had no jurisdiction, and not upon the ground that the commissioners had committed an error either of law or fact in the exercise of their jurisdiction. This is manifest from the fact, that the court was careful to say that they could not go into any investigation of the merits of the case, "because that is a matter of judicial investigation, and cannot be reviewed by mandamus proceedings." This is also shown by the nature of the principal authority relied upon (*Geter* v. *Commissioners*, 1 Bay, 348), for the decision in that case clearly rested upon the ground of lack of jurisdiction, as did, also, the subsequent case of *State* v. *Com'rs of Roads*, 2 Brev., 293. But what puts the matter beyond all dispute, is the fact that the Chief Justice, in delivering the opinion of the court, expressly recognizes the rule as we have laid it down above; for, in speaking of the writ of mandamus, he says: "It cannot, however, issue either to a public officer, or to an inferior court, as to matters requiring the exercise of official judgment, or resting on judicial investigation and discretion." So that it is quite clear that neither of the cases cited conflicts with or impinges upon what we regard as the well settled rule as above stated.

Now, as it is quite clear that the pension board, in disapproving the petitioner's application for a pension, have not acted without jurisdiction, as that is one of the very things for which the board was constituted—"to approve or disapprove such applications"—the inquiry is, whether the duty imposed upon the board was a mere ministerial duty or was it one requiring the exercise of judgment or discretion. It seems to us that it was plainly the latter. To approve or disapprove the application, necessarily implies the duty of examination—both of questions of law and fact—for the purpose of determining whether the application should be approved or disapproved; and this necessarily implies the exercise of judgment. The act, after prescribing what class of persons shall be entitled to receive the bounty intended, and the kind of evidence—affidavits and certificates—required to show that the appellant is one of those entitled, which, with the appli-

cation in writing, shall be addressed to the comptroller general, provides in the 7th section, that "the application with the accompanying papers shall be forwarded to the comptroller general, who, with the attorney general and the secretary of State, shall constitute a board to approve or disapprove such applications, any two of whom shall have authority to act." Now, for what possible purpose could the legislature have required that these public officers should constitute a board, except for the purpose of examining and determining whether a given applicant had brought himself within the class of beneficiaries provided for by the act? And how could such purpose be effected, except by inquiry into the terms of the act, and examination of the evidence submitted, which necessarily implies the exercise of judgment? If the intention of the legislature had been that the pension should be allowed to any person who might file with the comptroller general the evidence prescribed, which is most minutely specified in the act, there certainly would have been no propriety in requiring the application accompanied by such evidence to be submitted to the board for approval or disapproval.

It seems to us, therefore, that this is not a proper case for mandamus. If the respondents had refused, upon demand, to perform the duty required of them by the act—to approve or disapprove the application of the petitioner—then the court could by mandamus compel them to act, but it cannot, by that writ, guide or control their judgment. To use the language of Colcock, J., in *State* v. *Bruce, supra*, the court "can only say they shall act, but will not say *how*." The court by this writ can only compel them to approve or disapprove a given application, but will not say which they shall do, for that is a matter which has been left to the judgment of the board; and even if they have erred in the exercise of their judgment, mandamus is not the proper remedy for such error.

But as the board, charged with an important public duty, are anxious to have the instructions of this court as to the proper construction of the act, we will, for the purposes of this case, assume that mandamus is the proper remedy, and consider the case upon its merits. The sole question is as to the proper construction of the 8th section of the act, which has been hereinbe-

fore set out in full. It will be observed that, under the terms of that section, it is not *every* widow of a soldier who is entitled to a pension, but it is only such widow "while she remains unmarried" who is entitled to receive the benefit of the act. It is conceded that the petitioner, after the death of her first husband, under or through whom she claims a pension, did not *remain* unmarried, for she married again just after the close of the war. It would seem, therefore, that she cannot be regarded as one of the class provided for by the 8th section. The word "remains" implies the idea of continuity, and the petitioner certainly did not *continue* unmarried after the death of her first husband. Conceding that she is still the widow of her first husband, notwithstanding her second marriage, and thus fulfils one of the conditions prescribed by the section, yet as she did not *remain* unmarried, the other condition is not fulfilled, and therefore she cannot claim.

The analogy sought to be drawn from the case of dower, where a woman who marries a second time may still claim dower out of her first husband's estate as his widow, does not seem to us to hold good. Dower is a right, which, inchoate during coverture, becomes a *vested estate* upon the death of the husband, to which the wife has as good a title as she could have under a grant from the State, or a conveyance from some third person, and of which she cannot be deprived except by her own deed or by operation of law. Her re-marriage does not divest her of this estate, and hence, notwithstanding her second marriage, she may recover such estate, just as she might recover any other estate. While it is true that she acquired such estate by virtue of her marriage with her first husband, after his death she has the same right to it as if she had bought and paid for it in money. Hence, to preserve her title, it is wholly immaterial whether she remains a widow or marries again. Here, however, the petitioner, when she contracted her second marriage, had no vested right to a pension, as the act bestowing that bounty was not passed until many years after that event. It does not seem to us that there is any analogy to the case of dower.

While, therefore, we freely admit that the construction of the act is not free from doubt, we are not prepared to say that the

pension board have erred in the construction which they have placed upon the act. The fact that it is doubtful, is, of itself, sufficient to prevent the issuing of the writ of mandamus, for, as was held in *Ex parte Barnwell* (8 S. C., 264), mandamus does not lie to compel an officer to perform an act where it is at least doubtful whether it is his duty, under the terms of the law which is claimed to have created the duty, to perform it.

The judgment of this court is, that the rule be discharged and the petition dismissed.