## DAVIS *v.* NEAL.

### Opinion delivered October 23, 1911.

1. HOMESTEAD—RIGHTS OF WIDOW WHO REMARRIES.—Under Gould's Digest, c. 68, secs. 29, 30, providing that "every free white person of this State, being the head of a family, shall be entitled to a homestead," and exempting such homestead "during the time it shall be occupied by the widow." etc., *held* that the right of homestead attaches to a wife who has outlived her husband, and is not lost when she remarries. (Page 401.)

2. LIMITATION OF ACTIONS—RECOVERY OF HOMESTEAD.—As the heirs of the deceased owner of a homestead had no right to its possession until the termination of the widow's homestead estate, the statute of limitations would not run against them until a termination of her homestead estate. (Page 402.)

3. LACHES—WHEN NO DEFENSE.—The doctrine of laches has no application where the plaintiffs are not seeking equitable relief, but to enforce a legal title, and where their action is not barred by the statute of limitations in reference thereto. (Page 402.)

4. ESTOPPEL—SILENCE.—Mere silence will not estop a party to claim land unless in some way the party relying upon the estoppel is put to disadvantage by the action of the party said to be estopped. (Page 403.)

Appeal from Bradley Chancery Court; *Zachariah T. Wood*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellees instituted this suit in the chancery court against appellant to cancel a tax deed from the State to the appellant as a cloud on their title, to confirm their title and for a writ of possession.

In 1864, William A. Leslie died intestate, owning and occupying the lands in controversy as a homestead. He left

surviving him his widow, Ann Leslie, and three minor children; namely, Mary E., aged six years; Maggie J., aged four and a half years; and Annie M., aged three years.

The lands were situated in Bradley County, Arkansas, and the mother and children continued to reside thereon. In 1870, the widow married the appellant, J. H. Davis, and continued to occupy the lands as her homestead until September, 1908, when she died. Her daughter, Mary E., lived with her until her marriage in January, 1884, to David Neal, at which time she was twenty-four years old.

Maggie J. lived with her mother until her marriage in October, 1885, to Sam Boyce. She has since died, leaving surviving her minor children, who are the remaining appellees in the case. No dower was ever assigned the widow, Ann Leslie.

Annie M. Leslie was never married, and died without issue. The lands were forfeited to the State for the nonpayment of taxes for the year 1868. The appellant, after his marriage to Annie Leslie, purchased the State's title thereto. He testified that he had been in possession of the lands ever since June 3, 1872, and has made valuable improvements thereon. He built a residence costing about $400.00 in 1876 or 1880, and a barn which cost him about a hundred dollars. Within the last two years he testifies that he has put up considerable wire fencing, but does not state the amount and value of same. He further states that the appellees have known all the while that he has claimed the land in question as his own individual estate, and that he has paid taxes on same.

The chancellor rendered a decree in favor of the appellees, and the case is here on appeal.

*John E. Bradley,* for appellant.

1. The right of homestead conferred by sections 29 and 30, Gould's Digest, chap. 68, depended upon two conditions, *i. e.,* continuance of widowhood and occupancy. That of the children depended upon occupancy. This right remained in Leslie's children while they occupied the premises, but it ceased as to the widow when she remarried, as to Mary when she married Neal and moved to another place, and as to Maggie when she moved away after her marriage to Boyce. These daughters were not postponed in any right which they may have had until the death of Mrs. Davis, she having ceased to

occupy the premises as the widow of Leslie from the time of her marriage to Davis. Webster's Dict. "Widow;" 2 Bouv. Law Dict., 29 Am. & Eng. Enc. of L. (1 ed.), 110; 8 Words & Phrases, "Widow," and cases cited; 51 Pa. St. 440.

2. Appellees are estopped by their laches. Appellant's deed from the State was on its face *prima facie* evidence of title in him to the property, and justified his holding same and making improvements under color of title. If his deed was void, appellees' right of action for possession accrued when they reached their majority, yet, although appellant's claim of title and possession was open, notorious and continuous from the year 1872, and although he continued to make valuable improvements thereon, no suit was instituted until 1910.

*Herring & Williams,* for appellees.

1. The statement "during the time it shall be occupied by the widow" means that she at once, upon the death of the homesteader, becomes the owner of the homestead right, which shall continue so long as she shall occupy it, without reference to whether she remarries of not. This accords with policy of our courts to construe liberally our homestead laws so as to effectuate their human purposes.

The use of the words "the widow" in the statute is merely to designate or point out the person to whom the homesteader's rights would pass at his death, and not to prescribe the conditions of widowhood as the only period during which she could enjoy the right. A homestead once vested continues through life unless abandoned. 43 Ark. 429; 71 Ark. 203, 208; 65 Ark. 373, 376; 21 Cyc. 569, subdiv. "v;" 61 Ark. 575, 579; 28 Ark. 280. 291.

2. Since Mrs. Davis's homestead right continued until her death in 1908, no cause of action accrued to appellees until that time; therefore no statute of limitation can be pleaded against them, neither can laches be imputed to them. 60 Ark. 70, 74; 65 Ark. 90, 96; 83 Ark. 196, 200.

HART, J., (after stating the facts). It is conceded by the counsel for both sides that the decision of this case depends upon the construction to be given to sections 29 and 30 of chap. 68 of Gould's Digest. Section 29 provides, in substance, that every free white person of this State, being the head of a

family, shall be entitled to a homestead." Section 30 reads as follows:

"The preceding section shall be deemed and construed to exempt such homestead in the manner aforesaid, during the time it shall be occupied by the widow or child or children of any deceased person, who was, when living, entitled to the benefits of this act."

It is contended by counsel for the appellant that the words "widow," as used in the act, means a woman who has lost her husband by death, and also remains unmarried. They insist that when Ann Leslie, the widow of William Leslie, married the appellant, J. H. Davis, her right of homestead in the lands in controversy ceased. On the other hand, it is contended by counsel for the appellees that the word "widow" is used in the sense of a wife who has outlived her husband.

We think that the construction contended for by counsel for appellant is too narrow and literal, and is contrary to the spirit and intent of the act. It is the settled policy of this court that homestead acts are remedial, and should be liberally construed to effectuate the beneficent purposes for which they are intended. We think that the word "widow," as used in the act, refers to the person, and not to her state or condition, whether she remains a widow or marries again. The rule is that whenever a right by law is attached to a person by reason of her being a widow, such right remains, unless other words are used in the act, which limit it. If the Legislature had intended that her right of homestead should cease when she married again, it would doubtless have used words of that import, such as "during her widowhood," which would refer to her state or condition, and not to the person, or would have added the words "until she marries again" or "so long as she remains unmarried."

Counsel for the appellant invokes the doctrine of laches as a bar to appellees' right of action, but we cannot agree with them. In the case before us the widow of William Leslie continued to occupy and hold possession of the land as her homestead from his death to her death in September, 1908, as she had a right to do. Therefore, appellees had no right of action for the possession of the land in controversy until a termination of her homestead estate in the land. *Gannon* v. *Moore,* 83

Ark. 196;  *Ogden* v. *Ogden*, 60 Ark. 70; *Gallagher* v. *Johnson*, 65 Ark. 90; *Abramson* v. *Rogers*, 79 Ark. 198; *Watson* v. *Hardin*, 97 Ark. 33.

In the case of *McFarlane* v. *Grober*, 70 Ark. 371, the court held (quoting from syllabus): "The doctrine of laches has no application to a case where the plaintiff is not seeking equitable relief, but to enforce a legal title, and where her action is not barred by the statute of limitations in reference thereto." Here appellees are seeking to enforce a legal right, and there are no peculiar circumstances which prevent them from asserting that right.

In the case of *Fox* v. *Drewry*, 62 Ark. 316, the court said: "A married woman may be estopped to claim real estate, but mere silence or inertness will not suffice to work an estoppel. *Sims* v. *Everhardt*, 102 U. S. 300. Mere submission to the injury for any time short of the period limited by statute for the enforcement of the right of action cannot take away such right, although, under the name of laches, it may afford a ground for refusing relief under some peculiar circumstances. *De Bussche* v. *Alt*, L. R. 8 Ch. Div. 286, 314. "Unless in some way the party relying upon an estoppel is put to disadvantage by the action of the party said to be estopped, it will not be available."

As we have already seen, appellee's mother did not die until September, 1908, and they had no right of action for possession of the premises until that time. Since her death the only improvement put on the land by appellant was some wire fencing. He does not, however, state the cost of this, and it is probable that he was compensated therefor by the collection of the rents. We do not think, in any event, that the silence of appellees implied consent.

It follows that the decree will be affirmed.