No. 33,189

ANNIE L. DUCKETT, *Appellee*, v. KANSAS SOLDIERS' COMPENSATION BOARD, *Appellant*.

(66 P. 2d 410)

Opinion filed April 10, 1937.

*Clarence V. Beck*, attorney general, *Wm. E. Scott*, assistant attorney general, and *James P. Coleman*, of Junction City, for the appellant.

*U. S. Weary*, of Junction City, for the appellee; *I. M. Platt*, of Junction City, of counsel.

The opinion of the court was delivered by

DAWSON, C. J.: The question in this appeal is whether a soldier's widow who has remarried can collect the compensation due the deceased soldier which was not paid to him in his lifetime.

The late Ernest Moody was a Kansas soldier who served in the United States Army during the World War. As such he was entitled to compensation for the time of such service under the Kansas statute. (G. S. 1935, 73-102.) Moody died before receiving his compensation. He left a widow, but no children. It is conceded that she would have been entitled to collect the compensation due her husband if she had not remarried. (G. S. 1935, 73-120, 73-142; *Elwood v. Soldiers' Compensation Board*, 117 Kan. 753, 232 Pac. 1049.)

The Kansas Soldiers' Compensation Board disallowed the claim of the appellee on two grounds, but the only one of present concern was thus stated by the appellant:

"The state of Kansas does not pay a bonus to remarried widows of former soldiers, you having been remarried to Henry Duckett, July 7, 1930."

The trial court decided that appellee was entitled to judgment.

The compensation board appeals, contending that since appellee's remarriage she has no claim against the appellant as the widow of the Kansas soldier, Ernest Moody. In support of this contention appellant cites respectable authority that a widow means "a woman who has lost her husband by death and has not taken another" (68 C. J. 263); "an unmarried woman whose husband is dead" (3 Bouvier's Law Dictionary, 3d Rev., 3454); "a woman who has lost her husband by death; the female survivor of a marital union. A woman who has not remarried after the death of her husband" (Webster's New International Dictionary, 2d ed.).

Counsel for appellant cite *Town of Solon v. Holway,* 130 Me. 415, 157 Atl. 236. In that case the statute exempted from taxation the estates of Union soldiers to the value of $5,000, "or to the widows" of such soldiers, sailors or marines. Martha Holway was married to Emerson Joy, a Union soldier, in 1878. He died in 1880, and she married Isaac Holway in 1885. Isaac died in 1924. Thereafter she claimed to be entitled to the statutory exemption of her property from taxation as the widow of her first husband. But the court held otherwise, saying, "On the death of her second husband the defendant became his widow, and did not revert to her former status as the widow of Emerson Joy." But the court added:

"Cases which might at first glance seem opposed to this principle are distinguishable. In some instances the legislative intent has been to make the statute applicable to a person regardless of her remarriage; and, in others, the term 'widow' has been used to designate the person who would on the death of her husband acquire a vested interest, as in the case of a homestead exemption (*Brady v. Banta,* 46 Kan. 131; *Davis v. Neal,* 100 Ark. 399), or a vested right such as may be given in the compensation acts (*Hansen v. The Brann & Stewart Co.,* 90 N. J. L. 444.)" (p. 416.)

Looking into these distinguishable cases cited by the supreme judicial court of Maine, in *Brady v. Banta,* 46 Kan. 131, 26 Pac. 441, this court held that the fact that a widow remarried did not destroy the homestead character of the property which devolved on her and her children on the death of her first husband. In *Davis v. Neal,* 100 Ark. 399, 140 S. W. 278, it was similarly held that the heirs of a deceased owner of a homestead had no right of possession "during the time it shall be occupied by the widow," and that the widow's right of occupancy was not lost, although she remarried, so long as she and her second husband continued to reside on the property. The court said:

"We think that the word 'widow,' as used in the act, refers to the person, and not to her state or condition, whether she remains a widow or marries again. The rule is that whenever a right by law is attached to a person by reason of her being a widow, such right remains, unless other words are used in the act, which limit it. If the legislature had intended that her right of homestead should cease when she married again, it would doubtless have used words of that import, such as 'during her widowhood,' which would refer to her state or condition, and not to the person, or would have added the words 'until she marries again' or 'so long as she remains unmarried.' " (p. 402.)

In *Hansen v. Brann & Stewart Co.*, 90 N. J. L. 444, 103 Atl. 696, which was a workmen's compensation case, it was held that the remarriage of a widow did not forfeit her vested right to accrued compensation payments for the death of her husband in an industrial accident, notwithstanding a statutory provision that on her remarriage her further right to weekly payments should cease.

Perhaps a more helpful case than any of the foregoing was that of *McDaniel v. Sloan*, 157 Tenn. 686, 11 S. W. 2d 894. In that case a World War soldier effected a war-risk insurance policy on his life, naming his father as beneficiary. Later the soldier married Mamie Evans. The father collected the insurance for some years and died, leaving two minor sons, brothers of the deceased soldier. The unpaid balance due on the policy, $3,803, was paid to the administrator of the deceased soldier's estate. Meantime, Mamie Evans, widow of the soldier, remarried; and the legal question involved in the action was whether the fund should go to her or to the soldier's brothers as next of kin. Excerpts from the court's opinion read:

"Neither the policy nor the federal statutes are controlling, further than that the World War veterans act of 1924 provides that, 'when any person to whom such insurance is now awarded dies or forfeits his rights to such insurance then there shall be paid to the estate of the insured the present value of the remaining unpaid monthly installments of the insurance.' This provision, as we have seen, has been complied with.

"Looking to the Tennessee statute governing the distribution of the estate of one who dies intestate, it . . . reads as follows: 'The personal estate as to which any person dies intestate, after the payment of the debts and charges against the estate, shall be distributed as follows: (2) To the widow altogether, if there are no children, nor the descendants of children.'

"(2) The chancellor held that this fund goes to the widow, there being no children. . . .

"We concur with the chancellor. Our statute directs the distribution to be made to one coming within the terms of a definite description applicable as of the date of the death of the intestate. That this person thereafter changes her personal *status* so as to bring her under a different general definition, does not serve to make uncertain her identity under the statute, any more

than it would do under a will. It is the duty of the administrator to pay the fund to the party coming within the terms of the statute as of the date of the death of the intestate.

"It is said that this property was not a part of the estate of the intestate at the time of his death and that the statute is so limited. If Cole had by will provided that any fund coming to his estate from this policy upon the death of the named beneficiary should go to 'my widow,' it could hardly be said that her right to take would be cut off by her remarriage. The effect of the statutory direction is the same." (pp. 687, 688.)

In *Mathews v. Marsden et al.*, 71 Mont. 502, 230 Pac. 775, 778, the action was by Julia Mathews to have separately decreed to her one half of the estate of John A. Peat. She and Peat were married in 1904. They had no children, and he died intestate in 1919. Julia remarried in 1922. The pertinent statute, in part, read:

"If a husband die, leaving a widow, but no children, nor descendants of children, such widow may, if she elect, have, in lieu of her dower in the estate of which her husband died seized, whether the same shall have been assigned or not, absolutely and in her own right, as if she were sole, one half of all the real estate which shall remain after the payment of all just debts and claims against the deceased husband; . . ." (p. 509.)

The heirs of her first husband contended that when Julia ceased to be the widow of Peat by her remarriage her right under the statute to elect was gone, and she was remitted to such interests in her first husband's estate as were cast on her by operation of law. The trial court ruled otherwise and gave judgment in Julia's favor. In affirming this judgment the supreme court said:

"Upon the death of Peat the respondent's inchoate right to a one-third interest in all of the lands, of which Peat died seized, became consummate. . . .

"By this provision she has the absolute right to take in fee, in lieu of the common-law dower, one half of all the real estate, subject to the payment of debts lawfully due from the estate. This estate falls to her, not as heir, or by will of her husband, but by virtue of her marital right, and without regard to the law relating to the rights of heirs, or to any will made by the husband. . . .

"Had it been the purpose of the legislature to have used the word 'widow' in a narrower or more restricted sense in section 5813 than in section 5821, it would doubtless have said so. We think that the word 'widow,' as used in both of these sections of our codes, refers to the person and not to her state or condition, whether she remains a widow or marries again. We are of the opinion that it was not the purpose of our legislature to penalize a widow in case of her remarriage, and such would be the result if the construction of the word 'widow' contended for by the appellant were adopted.

"The New York court, in *Ray's Estate*, 13 Misc. Rep. 480, 35 N. Y. Supp. 481, among other things says: 'A woman, though the wife of another, is still the widow of her former husband; though married to another woman, the

husband is still the widower of his former wife, and, this being so, both come, not only within the language of the law, but within its just and reasonable construction. The law invests them with the name of "husband" or "wife" or "widow" for certain legal purposes, and under these names, although the designation may not come within the definition of the dictionary, property may vest in them, whether it comes to them by legacy or otherwise. Notwithstanding the definitions of the words "wife," "widow," and "husband," we apprehend it is not our duty to accept them in place of the statutes of this state, which make use of these words, whether correctly or not, to designate persons entitled to certain legal rights. The words "wife," "widow," and "husband" have obtained a legal use and significance in the settlement of estates which may not correspond to the technical definition of the lexicographers, but, it is the duty of courts to give that effect to these words which long use and custom have sanctioned.' " (*Mathews v. Marsden,* 71 Mont. 502, 508, 509, 510.)

See, also, *Estate of McArthur,* 210 Cal. 439, 292 Pac. 469, 72 A. L. R. 1318, and annotation 1324-1328.

Conceding that the foregoing cases are not strictly analogous to the case at bar, they do show a general attitude of the courts to hold that the term "widow" indicates a person, not the mere status of such person. The general policy of the law is favorable to marriage, and it is not for the courts to put a strained construction on a statute which would penalize remarriage. If the legislature had intended that her remarriage should strip the widow of what would otherwise be her right, it could have said so. Note the unqualified language of our statute:

"The state of Kansas acknowledges its indebtedness to, and promises to pay to each person who was a resident of the state of Kansas at the time of entering the service, and who served in the World War in any branch of the army, navy or marine corps of the United States prior to November 11, 1918, and who was honorably discharged therefrom, the sum of one dollar per day for each day of his or her entire service during the emergency created by the World War, which for the purposes of this act shall be construed as commencing April 6, 1917, and ending June 30, 1919, which compensation shall be in addition to all pay and allowances made by the United States government." (G. S. 1935, 73-102.)

The state unqualifiedly acknowledged its debt to appellee's first husband, Ernest Moody. It did not pay him in his lifetime. What was due him passed absolutely to his widow under the statute of descents. (*Elwood v. Soldiers' Compensation Board,* supra.) It follows that appellee's right to his compensation is unassailable.

The other issues which were raised in this case were either satisfactorily determined in the trial court or have been abandoned.

The judgment is affirmed.