TRATHEN v. UNITED STATES et al.

Nos. 10566, 10581.

United States Court of Appeals,
Third Circuit.

Argued May 20, 1952.

Decided Sept. 12, 1952.

Russell Chapin, Holmes Baldridge, Asst. Atty. Gen., D. Vance Swann, Joseph A. Lowther, Attys. Dept. of Justice, Washington, D. C. (Gerald A. Gleeson, U. S. Atty., J. C. Bowen, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for United States.

Cletus C. Kilker, Girardville, Pa., for Mary Trathen Kerrigan.

John Lavelle, Ashland, Pa. (John W. Dickerson, Philadelphia, Pa., on the brief), for Stephen Trathen.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

The question presented is whether the surviving spouse of a deceased soldier who remarries subsequent to his death is a "widow" within the meaning of Section 602(h)(3) of the National Service Life Insurance Act.[1]

The facts giving rise to the appeal are as follows: On April 20, 1935, Henry R. Trathen was married to Mary Trathen, now Mary Trathen Kerrigan. In June, 1943, and again in November, 1943, Henry, while in the armed services, entered into contracts of National Service Life Insurance with the United States, each in the amount of $5,000. Catherine Wills Trathen, Henry's mother, was designated beneficiary of both policies. No contingent beneficiary was named. On April 12, 1945, Henry was killed in action in Germany. No children were born of the marriage between Henry and Mary Trathen. On May 26, 1945, Mary Trathen was married to Martin Kerrigan.

After Henry's death the Veterans' Administration paid monthly installments under the policies to Catherine Wills Trathen, until she died on May 25, 1949. Thereafter, installments were paid to Mary Trathen Kerrigan, the person determined by the Veterans' Administration to be entitled to the balance of the proceeds in the absence of a named contingent beneficiary.[2]

The plaintiff, Stephen Trathen, was the father of the insured.[3] He commenced the present action against the United States on March 28, 1950, claiming that he was entitled to the proceeds of the policies from and

1. 38 U.S.C.A. § 801 et seq.

2. These payments were suspended on May 1, 1950, after the institution of the present suit.

3. Stephen Trathen has died since the entry of judgment in his favor by the court below. In view of our disposition it has not been necessary to resolve the question as to whether his personal representative can succeed to his asserted rights under the policies. See United States v. Henning, 1 Cir., 1951, 191 F.2d 588, certiorari granted, 342 U.S. 917, 72 S.Ct. 365.

after the death of Catherine Wills Trathen, the sole designated beneficiary. The United States joined Mary Trathen Kerrigan as an additional defendant under Rules 13(h) and 22 of the Federal Rules of Civil Procedure, 28 U.S.C. At the close of all the pleadings, the plaintiff moved for summary judgment under Rule 56; similarly, the United States moved for summary judgment in favor of Mary Trathen Kerrigan. The District Judge, in an opinion reported at 96 F.Supp. 809, ruled that Mary Trathen Kerrigan was not entitled to the proceeds of the policies because of her remarriage during the lifetime of the designated beneficiary. Accordingly, the judgment was entered in favor of Stephen Trathen against the United States for all installments due since the date of death of Catherine Wills Trathen. Both the United States and Mary Trathen Kerrigan appealed.

We are of the opinion that the judgment of the District Court must be reversed.

Section 602(h) (3) of the National Service Life Insurance Act provides that any installments of insurance remaining unpaid at the date of death of the beneficiary named in the policy are to be paid as follows:

"\* \* \* to the person or persons then in being within the classes hereinafter specified and in the order named, unless designated by the insured in a different order—

"(A) to the widow or widower of the insured, if living;

"(B) if no widow or widower, to the child or children of the insured, if living, in equal shares;

"(C) if no widow, widower, or child, to the parent or parents of the insured who last bore that relationship, if living, in equal shares;"

The learned District Judge interpreted the phrase "then in being" in Section 602 (h) (3) as requiring the surviving spouse of an insured to remain unremarried in order to be eligible under this section; and, accordingly, held that Mary Trathen lost her status as Henry Trathen's "widow" by virtue of her remarriage shortly after his death.

■ We are in agreement with the District Judge that "then" refers to the date of death of the named beneficiary.[4] However, we do not subscribe to the view that a surviving spouse who has remarried prior to that date is no longer "in being" within the meaning of Section 602(h) (3). The requirement that a claimant be "then in being" means only that the claimant must be alive in order to take under the section; it has no reference to marital status. In our view, a surviving spouse qualifies under Section 602(h) (3) as the "widow" of an insured if she was his lawful wife on the date of his death, without regard to whether she subsequently remarries.

While it is true that the ordinary dictionary definition of "widow" is an *unmarried* woman whose husband is dead,[5] the legal consequences arising from the use of a term in legislation are not necessarily determined by its dictionary definition. The term "widow", as used in statutes, has been held repeatedly to refer to the *person* of the surviving spouse rather than to marital state or condition. Thus, in Georgia Railroad & Banking Co. v. Garr, 1876, 57 Ga. 277, applying the term as used in the Georgia Wrongful Death Act, the Supreme Court of Georgia stated that "the word 'widow' indicates the person, not the state, and is used as synonymous with wife." Likewise, in Mathews v. Marsden, 1924, 71 Mont. 502, 230 P. 775, 778, the Montana Supreme Court, speaking with reference to the "widow's" statutory election in lieu of dower, held that "\* \* \* the word 'widow,' \* \* \* refers to the person and not to her state or condition, *whether she remains a widow or marries again.*" (Emphasis supplied.) See also In re Rhead's Estate, 1939, 288 Mich. 220, 284 N.W. 706; Duckett v.

---

4. "It seems to me that the logical and plain meaning of the \* \* \* language of the statute is that 'then in being' refers to the point of time 'at the death of [any] beneficiary' ". 96 F.Supp. at page 812.

5. 2 Bouv.Law Dict., Rawle's Third Revision, page 3454; Funk & Wagnalls New Standard Dictionary, 2711.

Kansas Soldiers' Compensation Board, 1937, 145 Kan. 520, 66 P.2d 410; Hansen v. Brann & Stewart Co., 1917, 90 N.J.L. 444, 103 A. 696; Davis v. Neal, 1911, 100 Ark. 399, 140 S.W. 278, L.R.A.1916A, 999.

There are no appellate decisions under the National Service Life Insurance Act which define "widow" as used in Section 602(h) (3). However, there are numerous cases under Section 602(g) of the Act[6] which hold that the "widow" of an insured is the person who was "validly married to him at the time of his death". United States v. Snyder, 1949, 85 U.S.App.D.C. 198, 177 F.2d 44, 46.[7] There are also two District Court cases under Section 602(h) (3) which allowed recovery by a surviving spouse who had in fact remarried during the lifetime of the named beneficiary. See Angle v. Baker, D.C., E.D. Tenn. 1948, 94 F.Supp. 386, and Blanchard v. United States, D.C.N.H.1950, 91 F.Supp. 889. While the issue of remarriage was not specifically discussed in either of these cases, both opinions referred to the remarried spouse as the insured's "widow".

Our interpretation of Section 602 (h) (3) is in accord with established principles of statutory construction. The meaning of any given word in a statute is properly determined by reading the language in question together with other sections of the act. White v. United States, 1938, 305 U.S. 281, 59 S.Ct. 179, 83 L.Ed. 172. In this respect, it is significant that Section 602(d) (2) of the National Service Life Insurance Act, in granting automatic insurance to servicemen who had died in service prior to a certain date, provides for payment to "the widow * * * of the insured, *if living and while unremarried* * * *"

(emphasis supplied). Thus, Congress used the phrase "while unremarried" when it meant to require the surviving spouse of an insured to remain single. It follows that, in Section 602(h) (3), when Congress used the word "widow" alone, without the modifying words, it did not intend for her to remain unmarried in order to be eligible for benefits after the death of a named beneficiary.[8]

For the reason stated, the judgment of the District Court will be reversed and the cause remanded with directions to enter judgment in favor of the United States and Mary Trathen Kerrigan.

---

6. Section 602(g) provides in relevant part: "The insurance shall be payable only to a widow, widower, child * * *, parent * * *, brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes herein provided * * *." 38 U.S.C.A. § 802(g).

7. See also Schurink v. United States, 5 Cir., 1949, 177 F.2d 809; Castor v. United States, 8 Cir., 1949, 174 F.2d 481; Muir

v. United States, D.C.N.D.Cal.1950, 93 F.Supp. 939; United States v. Layton, D.C.S.D.Fla.1946, 68 F.Supp. 247.

8. Such legislative history as is available supports this view. When Section 602(d) (2) was introduced in the form of a bill the Senate committee report pointed out that the requirements of eligibility under that section would be different than under other sections of the Act. Senate Report. Number 917, 87 Cong.Rec. 9983.