(77 P.3d 504)

No. 89,981

DIANNE B. OFFERMAN and SUSAN E. FESLER, Individually, as Co-administrators of the Estate of Lester C. Banka, Deceased, and as Successor Co-trustees of the Lester C. Banka Family Revocable Living Trust Created Under Instrument Dated April 10, 1990, *Appellants*, v. CAROLYN ROSILE, KATIE FESLER, BRIAN FESLER, AARON FESLER, MICHAEL OFFERMAN, and TERESA OFFERMAN, *Appellees*.

Opinion filed October 10, 2003.

*Richard A. Benjes*, of Hutchinson, for the appellants.

*Robert Martin*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for the appellees.

Before RULON, C.J., LEWIS, J., and GLENN D. SCHIFFNER, District Judge, assigned.

LEWIS, J.: This is a rather complex and confusing case involving a family revocable living trust.

Lester C. Banka died in January 2000. His daughters, Dianne B. Offerman and Susan E. Fesler, were appointed coadminsitrators of Lester's estate and were named as successor cotrustees of the Lester C. Banka Family Revocable Living Trust (Trust). The assets of Lester's estate were placed in the Trust, which named Dianne and Susan as beneficiaries subject to a lifetime income from the assets in trust to Carolyn Rosile, Lester's ex-wife, the rest of her life, or until she remarried.

Lester and Carolyn were married in May 1990. In April of that year, Lester prepared the Trust with the assistance of Betty Hostetler, a stockbroker who was not an attorney. The "Declaration of Trust" named Dianne and Susan as beneficiaries to share equally per stirpes. The provision in the Trust which provides particular difficulty to the parties was paragraph 12, which read: "The income from the Lester C. Banka Trust will be paid to Carolyn Banka, *widow, the rest of her life, or until she remarries.* Then all income goes back to the Trust for the surviving Trustees." (Emphasis added.) Lester referred to Carolyn in the Trust as "my wife." In June 1990, the Trust, along with Schedule A, was filed with the Reno County Register of Deeds.

In December 1995, Lester and Carolyn were divorced. Curiously, the divorce decree and settlement agreement in the divorce action made no specific mention of the Trust or Carolyn's interest therein. Neither party remarried, and Lester and Carolyn apparently continued to have a close social relationship up until the time of Lester's death. In February 2000, following Lester's death, the plaintiffs filed an action, requesting a declaratory judgment eliminating Carolyn as an income beneficiary under the Trust. The plaintiffs also alleged that Schedule A was not part of the Trust,

and, therefore, it should be read to provide for Dianne and Susan as the sole beneficiaries of the trust. The plaintiffs argued that because Lester referred to Carolyn in the Trust as "my wife," and "Carolyn Banka, widow," she was not entitled to receive income under the Trust because she was not married to Lester at the time of his death and the terms of the divorce agreement implicitly terminated Carolyn's beneficiary rights.

The parties submitted affidavits, deposition testimony, and other documents as evidence of their positions, and ultimately the trial court issued its memorandum opinion. The trial court denied the plaintiffs relief; it held that Schedule A was part of the Trust and that under current case law, a trust cannot be revoked by implication but requires an express statement. The court went on to find that Lester could have explicitly revoked the gift to Carolyn during the 5-year period between their divorce and his death, but he chose not to do so. The court also noted that the written property settlement agreement, which was part of the divorce case, made no mention that the assets placed in trust by Lester before their marriage were to be considered marital property or should be divided. We note at this point that not only was no mention made of the assets being placed in trust, no mention whatsoever was made of the Trust or any of the property in it in the divorce settlement. The trial court issued its decision, and this appeal follows.

## WAS SCHEDULE A PART OF THE TRUST OR A SEPARATE DOCUMENT?

The plaintiffs first argue that Schedule A is not part of the Trust instrument, as it is in conflict with various provisions of the Trust. The trial court specifically found that Schedule A was part of the Trust.

"The legal effect of a written instrument is a question of law for the court to decide. On appeal, a written instrument or contract may be construed and its legal effect determined by the appellate court regardless of the construction made by the trial court. [Citation omitted.]" *Dougan v. Rossville Drainage Dist.*, 270 Kan. 468, 486, 15 P.3d 338 (2000).

The Declaration of Trust itself was established in April 1990. The plaintiffs allege that Schedule A is not part of the Trust because Schedule A refers to property which was not purchased by Lester and Carolyn when the Trust was put into effect and because portions of Schedule A describe Carolyn as "Carolyn Banka," which was not her name until she married Lester, which was, again, after the Declaration of Trust. The plaintiffs concede that the Trust references Schedule A, but they assert that is only a list of assets and should not be considered a testamentary disposition under K.S.A. 59-606.

We disagree with the plaintiffs' interpretation. Although later dates are referenced in Schedule A, we could find the Trust was made in anticipation of marriage. One could assume that Lester should have been aware that he would be marrying Carolyn and purchasing the property on Ridgepoint Court at the point he prepared the Trust and Schedule A. Further, and more importantly, if Schedule A were not considered part of the Trust, the Trust itself would be incomplete. Schedule A's provisions set out in detail property descriptions, specific accounts for certain income deposits, and other property distributions, including gifts to Lester's grandchildren.

In any event, we conclude there is nothing in the record to indicate that Schedule A was prepared at a different date than the Declaration of Trust or that the provisions of the Trust and Schedule A are in conflict. "An appellant has the duty to designate a record sufficient to establish the claimed error. Without an adequate record, the claim of alleged error fails. [Citation omitted.]" *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 777, 27 P.3d 1 (2001). Because the plaintiffs have failed to establish otherwise, we hold that Schedule A was a part of the Trust.

## DIVORCE ACTION

The plaintiffs argue that even if the court considers Schedule A to be part of the Trust, it should find any provisions in favor of Carolyn were terminated upon her divorce from Lester.

We consider only one of the issues raised by the parties and consider that to be the dispositive issue in this action.

As stated earlier, paragraph 12 of the Trust provided: "The income from the Lester C. Banka Trust will be paid to *Carolyn Banka, widow, the rest of her life, or until she remarries.* Then all income goes back to the Trust for the surviving Trustees." (Emphasis added.)

The plaintiffs argue that Lester's use of the terms "widow" and "wife" to refer to Carolyn in Schedule A is evidence that Carolyn should not receive any Trust income because she was not married to Lester at the time of his death.

"Where the settlor makes a gift in trust for his 'widow' the instrument and surrounding circumstances may indicate that the settlor meant only the woman to whom he was married at the time of his death should take. [Citations omitted.] In other cases the intent is inferred that he meant only the woman to whom he was married at the time of creation of the trust. [Citations omitted.]" Bogert, Trusts & Trustees § 182, pp. 307-09 (2d ed. rev. 1979).

We begin our discussion by noting that certain words are important in their context. We are simply unable to ignore the terms "widow" and "wife." Those terms have a well-known meaning in the law and in our society, and we must assume that Lester knew what they meant when he put them in his Trust.

In Black's Law Dictionary, we find the following definition of widow: "A woman whose husband has died and who has not remarried." Black's Law Dictionary 1592 (7th ed. 1999). In Webster's Dictionary, the term "widow" is defined as a woman who has not remarried after the death of her husband. Webster's New Riverside Dictionary 1318 (1988).

Since Lester and Carolyn were divorced at the time of his death, Carolyn cannot be said to have been Lester's "widow." As noted by the definitions set forth above, a widow is someone whose husband has died and who has not remarried. Carolyn was divorced from Lester prior to his death, and, therefore, does not fit the definition of widow. If words have any significance in this action, Carolyn was not and could not have been Lester's widow at the time of his death or at any time thereafter.

We have found no Kansas cases considering this specific issue. There is a relevant workers compensation case, *Duckett v. Kansas Soldiers' Compensation Board*, 145 Kan. 520, 66 P.2d 410 (1937).

In *Duckett*, the question was whether an individual who was a widow at the time of her husband's death but who later remarried forfeited all of her rights as a widow. The Kansas Supreme Court concluded that the widow's pension was vested and could not be divested by the widow remarrying after the decedent's death. 145 Kan. at 524. These are not the facts of this case, and we do not believe *Duckett* applies. However, the *Duckett* court does discuss the issue:

"The compensation board appeals, contending that since appellee's remarriage she has no claim against the appellant as the widow of the Kansas soldier, Ernest Moody. In support of this contention, appellant cites respectable authority that a widow means 'a woman who has lost her husband by death and has not taken another.' (68 C.J. 263); 'an unmarried woman whose husband is dead,' (3 Bouviers Law Dictionary 3d Rev., 3454); 'a woman who has lost her husband by death; the female survivor of a marital union. A woman who has not remarried after the death of her husband' (Webster's New International Dictionary, 2d ed.)." 145 Kan. at 521.

The *Duckett* court continued:

" 'Had it been the purpose of the legislature to have used the word "widow" in a narrower or more restricted sense in section 5813 than in section 5821, it would doubtless have said so. We think that the word "widow," as used in both of these sections of our codes, refers to the person and not to her state or condition, whether she remains a widow or marries again. We are of the opinion that it was not the purpose of our legislature to penalize a widow in case of her remarriage, and such would be the result if the construction of the word "widow" contended for by the appellant were adopted.

" " '. . . The words 'wife,' 'widow,' and 'husband' have obtained a legal use and significance in the settlement of estates which may not correspond to the technical definition of the lexicographers, but it is the duty of courts to give that effect to these words which long use and custom have sanctioned.' " (*Mathews v. Marsden*, 71 Mont. 502, [508-10, 230 Pac. 775])." 145 Kan. at 523-24.

Although no Kansas cases considering the specific issue have been cited by the parties, other jurisdictions appear to be split on the issue. See *Goodman v. McMillan*, 258 Ala. 125, 129, 61 So. 2d 55 (1952), *cert. denied* 345 U.S. 929 (1953) (holding that gift to the widow of trustor was in consideration of the marital relation and clearly contemplated the wife to be in lawful wedlock with him at her husband's death); *Dillow v. Wagner*, 715 So. 2d 362, 363 (Fla. Dist. App. 1998) (finding that trustor's use of term "surviving

spouse," in establishing asset distribution upon trustee's death indicated that trustee's spouse at time of trustee's death, and not trustee's spouse at time document was created, was entitled to distribution); *cf. In re Lachlan's Trust*, 193 N.Y.S.2d 408, 414, 24 Misc. 2d 323 (1959) (holding that designation of named individual in trust agreement as settlor's husband is merely descriptive, and such individual does not forfeit his rights under trust instrument merely because the description subsequently ceases to fit him).

In our judgment, there is no real comparison to a situation wherein the litigant was the widow at the time of death and remained the widow for some period of time and later remarried with the present case where the facts show that Carolyn was never Lester's widow because she was not married to him at the time of his death.

Lester was an intelligent businessman who amassed an estate of approximately $1 million. We must assume that such an individual would be familiar with the meaning of the word "widow" and that he deliberately inserted that term in his Trust, making it a condition precedent that Carolyn receive funds from the trust *only* if she was his widow. Carolyn was never Lester's widow, and we hold that under that provision of the Trust, Carolyn is entitled to no distributions. We reverse the trial court's decision on that issue.

## PAROL EVIDENCE

The appellees contend that the provision of the Trust were ambiguous and, therefore, parol evidence was admissible to infer Lester's intent. We do not agree.

We see absolutely nothing ambiguous in the use of the term "widow." We see nothing ambiguous in the use of the statement that the income from the Trust will be paid to Carolyn Banka, widow, the rest of her life, or until she remarries. We note, once again, Carolyn was never Lester's widow.

If the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction. *KPERS v. Russell*, 269 Kan. 228, 236, 5 P.3d 525 (2000); see also *Anderson v. Employers Mutual Casualty Ins. Co.*, 27 Kan. App. 2d 623, 629, 6 P.3d 918, *rev. denied* 270 Kan. 897 (2000) (where a written agree-

ment is plain and unambiguous, the appellate court must not look beyond the four corners of the document to give effect to the intent of the parties). The construction of a written instrument is a question of law, to be construed and its legal effect determined by an appellate court. *Dougan*, 270 Kan. at 486.

When an ambiguity exists in a written instrument, parol evidence is admissible to ascertain the meaning of the words used. *In re Living Trust of Huxtable*, 243 Kan. 531, 533, 757 P.2d 1262 (1988). Whether an instrument is ambiguous is a question of law to be decided by the court.

In deciding this action, the trial court considered a number of extraneous facts, including that Lester and Carolyn remained on friendly terms and continued to have a relationship until Lester's death. The court noted that following a Hawaii trip in August 1999, Lester told Carolyn that she was still in the Trust and that "[the plaintiffs] don't like it very much, but you have been awfully good to me since 1990."

We conclude the trial court erred in considering that extrinsic evidence. We find no ambiguity in the Trust instrument, and we hold the use of extrinsic evidence was improper.

We affirm the trial court's decision that Schedule A was a part of the Trust. We reverse the balance of the trial court's conclusions and findings in this case.

Affirmed in part and reversed in part.