COMMONWEALTH OF KENTUCKY ex rel. Ed W. HANCOCK, Attorney General, Plaintiff,

v.

William D. RUCKELSHAUS, Acting Administrator, Environmental Protection Agency, et al., Defendants.

Civ. A. No. 7480–G.

United States District Court, W. D. Kentucky, Louisville Division.

Aug. 13, 1973.

Ed W. Hancock, Kenneth A. Howe, Jr., Paul A. Lynch, David C. Short, Frankfort, Ky., for plaintiff.

James A. Glasgow, Dept. of Justice, Washington, D. C., Robert H. Marquis, Herbert S. Sanger, Jr., Beauchamp E. Brogan, Justin M. Schwamm, Tennessee Valley Authority, Knoxville, Tenn., Andrew P. Miller, Atty. Gen., C. Tabor Cronk, Asst. Atty. Gen., Richmond, Va., G. Wilson Horde, Oak Ridge, Tenn., for defendants.

## MEMORANDUM AND ORDER

JAMES F. GORDON, Chief Judge.

This suit, brought on behalf of the Commonwealth of Kentucky by State Attorney General Ed W. Hancock, raises an important question concerning the authority of the States to regulate Federal activities and installations [1] under the Clean Air Act of 1970, 42 U.S.C. Section 1857 et seq. In general, the plaintiff asserts that Federal entities operating equipment or installations which emit air contaminants *must secure a permit* from the Kentucky Pollution Control Commission before operating such equipment. The permit re-

---

[1]. The Federal installations in question are: (1) Fort Campbell, Kentucky (home of the 101st Airborne Division); (2) Lexington-Bluegrass Army Depot, Lexington, Kentucky; (3) United States Army Armor Center and Fort Knox, Fort Knox, Kentucky; (4) Paducah Gaseous Diffusion Plant, Paducah, Kentucky, and (5) Installations operated by Tennessee Valley Authority.

quirement in question appears in Section 5 of the Kentucky Air Pollution Control Commission Regulations AP–1. Section 5, which was part of the air implementation plan which Kentucky submitted to the Federal Government pursuant to Section 110 of the Clean Air Act of 1970, 42 U.S.C. Sec. 1857c—5, provides in pertinent part as follows:

> (1) No person shall construct, modify, use, operate, or maintain an air contaminant source or maintain or allow physical conditions to exist on property owned by or subject to the control of such person, resulting in the presence of air contaminants in the atmosphere, *unless a permit therefor* has been issued by the Commission and is currently in effect. (Emphasis ours.)

The plaintiff further alleges that "Kentucky's Plan became Federal law pursuant to Sections 110, 113, and 118 of the Clean Air Act of 1970 . . . [and] Section 118 of the Clean Air Act of 1970 requires that 'federal facilities' comply with the approved Kentucky Plan . . . ." Complaint, page 13.

In his prayer for relief, the Attorney General seeks a mandatory injunction requiring the defendants,[2] except for the Environmental Protection Agency and its defendant-officers, to "apply for and to obtain permits from the Kentucky Air Pollution Control Commission . . . ." (Complaint p. 25). Also, a prohibitory injunction is sought restraining the defendants "from refusing

to comply with the provisions of Section 118 of the Clean Air Act of 1970." (Complaint p. 25). With respect to the EPA and its officers, the prayer requests that they be "[o]rdered to commence appropriate action under Section 113 of the Clean Air Act of 1970 to obtain full compliance by the defendants . . . with the Kentucky plan . . . ." A declaratory judgment and relief in the nature of mandamus are also sought.

The TVA defendants moved to dismiss, or, in the alternative, for summary judgment. A motion to dismiss was filed by the non-TVA defendants. The plaintiff countered with a motion for summary judgment against the TVA defendants.

When these motions came on for hearing, it was apparent that it would be necessary, in the disposition thereof, that the Court consider matters in the nature of affidavits and exhibits outside the pleadings. Rule 12(b), F.R.Civ.P. Accordingly, it was agreed by all parties, by counsel, that there being no issue of material fact as pertained to the legal defenses asserted, the Court, without objection, considered the entire matter as on cross-motions for summary judgment.

Only issues of law are before this Court.[3] These issues are: (1) whether the Clean Air Act of 1970 requires that the defendants obtain state permits before operating equipment which emits substances into the ambient air and (2)

---

2. All of the defendants except the Tennessee Valley Authority (TVA) and its officers were represented by the United States Department of Justice. The TVA was represented by its own attorneys. For clarity, the defendants are sometimes alluded to as (1) non-TVA defendants; and (2) TVA defendants.

3. The non-TVA defendants have submitted affidavits attesting that their installations, with a few minor exceptions which are being corrected, are in compliance with Kentucky's emission standards. The plaintiff has made contrary allegations. These factual disputes need not be

tried, however, since matters of law control the disposition of the case. TVA has submitted to Kentucky detailed information concerning emissions from its facilities as requested by Kentucky and in the form requested. TVA has also submitted plans and schedules for complying with Kentucky's emission standards. In furnishing such information, however, TVA informed Kentucky that while TVA fully intends to comply with its obligations under Section 118 of the Clean Air Act, those obligations do not include securing of state permits (Affidavit of Lynn Seeber). TVA accordingly has not applied for or obtained permits.

whether the doctrine of sovereign immunity is a barrier to maintenance of this suit.

### THE PERMIT ISSUE

■ Congress recognized that Federal facilities emitted appreciable amounts of various substances into the ambient air. Therefore, it provided in Section 118 of the Clean Air Act for control of pollution from Federal facilities. In pertinent part, Section 118 provides as follows:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, shall comply with Federal, State, interstate, and local requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements.

The question which is squarely before this Court is whether Congress intended, by enacting Section 118, to require the Federal Government to obtain permits from state agencies before operating equipment which generated air contaminants. Since this question must be answered in the negative, the defendants' motions must be granted.

All defendants contend that the requirement, in Section 118, that Federal entities "comply with Federal, State, interstate, and local requirements respecting control and abatement of air pollution" simply means that Federal facilities must comply with the emission standards and implementation plans of Sections 109 and 110 of the Act and, except for new facilities, the monitoring and other requirements of Section 114. The legislative history of the Act supports the defendants' interpretation of Section 118.

The Clean Air Act of 1967, 77 Stat. 392, Section 111, required that Federal agencies shall "to the extent practicable and consistent with the interest of the United States and within any available appropriations, cooperate with the Department of Health, Education and Welfare and with any air pollution control agencies in preventing and controlling the pollution of the air . . . ." This provision was changed by the Clean Air Act Amendments of 1970. The following analysis of the legislative history of Section 118 of the Clean Air Act provides an indication of Congress' intent concerning the change from the provision in the 1967 Act to the one in the 1970 Amendments.

On June 10, 1970, the House of Representatives passed H.R. 17255, a bill to amend the Clean Air Act of 1967. This bill would have required each Federal agency to "comply with the applicable Federal, State, interstate, and local *emission standards* and with the purpose of this Act . . ." [emphasis supplied]. H.R. 17255, 91st Cong., 2d sess., sec. 111 (1970). The House Report on the bill states, "The legislation directs Federal agencies in the executive, legislative and judicial branches to comply with applicable Federal, State, interstate, and local emission standards." H.Rept.No.91–1146, 91st Cong., 2d sess., p. 4 (1970), U.S.Code Cong. & Admin. News 1970, p. 5359. On September 22, 1970, the Senate passed S. 4358, a different bill to amend the Clean Air Act of 1967. The bill would have directed each Federal agency to "comply with the *requirements* of this Act in the same manner as any other person would so comply . . ." [emphasis supplied]. S. 4358, 91st Cong., 2d sess. sec. 118 (1970). The Senate Report on the bill states, "This section requires that Federal facilities meet the *emission standards* necessary to achieve ambient air quality standards as well as those established in other sections of Title I" [emphasis ours]. S.Rept.No.91–1196, 91st Cong., 2d sess., p. 23 (1970). Other sections of Title I of the Senate bill set forth emission standards for "new sources" (§ 112), "selected air pollution agents" (§ 114), "hazardous air pollu-

tion agents" (§ 115), and inspection, monitoring and entry provisions (§ 116). The above statement from the Senate Report clearly indicates that the "requirements" which the Senate bill would have Federal facilities comply with were the substantive emission "standards" set forth in the Act and other Title I provisions. The Senate bill did not require, any more than the House bill, Federal compliance with State procedures. Both the House and Senate language were changed by the Conference Committee. The new language, which was enacted by Congress, requires Federal facilities to "comply with Federal, State, interstate and local requirements respecting control and abatement of air pollution to the same extent that any person is subject to such requirements." Concerning this new language, the Conference Report states, "The House bill and the Senate amendment declare that Federal departments and agencies should comply with applicable standards of air quality and emission." H.Rept.No.91–1783, 91st Cong., 2d sess., p. 48 (1970), U.S.Code Cong. & Admin. News 1970, p. 5381.

■ It seems apparent, therefore, that Congress at all times contemplated a self imposed policy of Federal compliance with all applicable standards, but at no time contemplated subjecting Federal facilities to State procedures. If Congress had intended to abandon the well established doctrine, which has its basis in the Supremacy Clause, that the Federal Government is immune from attempts by states to subject it to state regulatory measures,[4] it would have so stated.

■ It must be noted, moreover, that Congress was sensitive to the issue of federal-state relations in enacting the Clean Air Act and, in a number of instances, expressly stated the manner in which Federal and State authority would interact in the case of Federal facilities.

Since Congress expressly granted authority to the states concerning some aspects of the Clean Air Act's impact on Federal facilities, the plaintiff's argument is, in essence, based on the contention that certain other grants of authority to the states must be implied from the phraseology of Section 118 of the Act. Such an argument flies in the face of the principle that, where a particular provision appears in a statute, the failure to include that same requirement in another section of the statute will not be deemed to have been inadvertent. 2 J. Sutherland, Statutory Construction sec. 4915 (3 ed. 1943).

Cases decided to date which support the conclusion arrived at herein include California v. Stastny, 4 ERC 1447 (C.D. Calif.1972), appeal pending 9th Circuit, and an unreported order in State of Alabama et al. v. Seeber et al. (N.D.Ala., No. 72–939), June 5, 1973. Notice of appeal filed June 28, 1973. In *Stastny*, the court held that "[d]efendants are not required to either apply for or obtain permits from the Air Pollution Control District prior to operating or using any equipment or machines at the naval base at Long Beach, California." 4 ERC at 1448. In *Seeber*, the court dismissed a complaint which was quite similar to the one at bar.

We further note that a permit has absolutely nothing to do with air quality. The substantive requirements of the implementation plan (*e. g.*, emission standards and compliance schedules) do, and it is those "requirements" which are essential to the improvement of air quality and are, we believe, the "requirements respecting control and abatement of air pollution" to which section 118 of the Clean Air Act refers.

THE CLAIM AGAINST THE EPA

■ In its second claim for relief, the plaintiff contends that the defendants

---

4. E. g. McCulloch v. Maryland, 4 Wheat. 316, 436, 4 L.Ed. 579 (1819); Ohio v. Thomas, 173 U.S. 276, 19 S.Ct. 453, 43 L.Ed. 699 (1899); Leslie Miller, Inc. v. Arkansas, 352 U.S. 187, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956).

Ruckelshaus,[5] Ravan and the Environmental Protection Agency have violated Section 113 of the Clean Air Act, 42 U.S.C. sec. 1857c–8, by failing "to commence appropriate actions . . . to compel compliance with the Kentucky Plan as to permits to operate, time schedules, and emission limitations . . . ." (Complaint para. 42). In paragraph 41 of the complaint, the plaintiff contends that there are "widespread violations of the Kentucky Plan, because of the inability of the Commonwealth of Kentucky to effectively enforce its rules and regulations."

■ Since, as is held above, the defendants correctly construed their responsibility with respect to applying for a state permit, the plaintiff's claim against the EPA and its officers does not state a claim upon which relief can be granted, for it was based on the assumption that the defendants misconceived their duty with respect to applying for permits. In any event, Section 113(a) of the Clean Air Act clearly grants the Administrator discretionary authority and, consequently, the Administrator's failure to take action under Section 113(a) is unreviewable since it was agency action "committed to agency discretion by law." 5 U.S.C. sec. 701. *See e. g.*, United States v. Walker, 409 F.2d 477 (C.A.9, 1970).

## SOVEREIGN IMMUNITY

All defendants have vigorously asserted that the doctrine of sovereign immunity is a barrier to the plaintiff's suit. Since the doctrine is applicable it serves

as an alternate basis for this Court's order.

Although the plaintiff listed in its complaint a number of statutes as the basis for this Court's jurisdiction in the matter, [6] the plaintiff has apparently chosen to rely upon the Clean Air Act of 1970, 42 U.S.C. Section 1857 et seq., with respect to the question of waiver of sovereign immunity.[7]

The sovereign immunity argument may best be analyzed in two steps. The first consideration is whether this suit, although in form against officers and agencies of the Federal Government, is actually a suit against the sovereign. Once we determine that this suit is against the sovereign, then we must also determine whether there has been a waiver of sovereign immunity in this instance.

■ To determine whether this suit against officers and agencies of the Federal Government must be treated as a suit against the sovereign, this Court is required to consider whether the suit would expend itself "on the public treasury, or interfere with the public administration." Dugan v. Rank, 372 U.S. 609, 620–621, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963). For if the relief sought would interfere in a substantial way with important government functions, the suit, although nominally directed against individuals, is "a suit against the Government over which the court, in the absence of consent, has no jurisdiction." Larson v. Domestic and Foreign Corporation, 337 U.S. 682, 688, 69 S.Ct. 1457, 1461, 93 L.Ed. 1628

---

5. Pursuant to Rule 25(d)(1) F.R.Civ.P., Robert Fri, Acting Administrator of the EPA, has been substituted as a defendant in place of William Ruckelshaus since Mr. Ruckelshaus has resigned from his former position as Administrator of EPA.

6. The plaintiff alleges, on page one of its complaint, that "[T]his action arises under the Fifth, Ninth, and Fourteenth Amendments to the Constitution of the United States of America; U.S.C. Title 42 [28], Section 1331; U.S.C., Title 42, Section 1857, et seq.; U.S.C., Title 5,

Section 702; U.S.C., Title 28, Section 2201, et seq., and U.S.C., Title 28, Section 1361."

7. The defendants argued that the statutes listed in footnote six, *supra*, did not vest this Court with jurisdiction. In its memoranda opposing the defendants' motions to dismiss and for summary judgment, the plaintiffs relied entirely on the Clean Air Act and did not urge that this Court had jurisdiction under any of the other statutes which it had invoked in its Complaint.

(1949).[8] In referring to sovereign immunity, the Sixth Circuit recently said:

Perhaps the minimum statement of that doctrine is that litigation must not be allowed to stop government in its tracks. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In this regard the effect of the action upon the sovereign rather than its form is controlling. The fact that the defendants are all named as individuals does not change the result. [Ogletree v. McNamara, 449 F.2d 93 (C.A.6, 1971)].

The question which this Court must address is whether this suit is barred because the relief which the plaintiff requests would interfere with basic functions of national defense and the carrying onward of congressionally authorized activities. Even Professor Davis, one of the foremost critics of the sovereign immunity doctrine, has acknowledged that:

The most persuasive reason for sovereign immunity that has been found in reports of cases is a remark in a dissenting opinion of 1882, that "The sovereign should not, without its consent, be dispossessed by judicial process of forts, arsenals, military posts, and ships of war, necessary to guard the national existence against insurrection and invasion . . ." [United States v. Lee, 106 U.S. 196, 226 [1 S.Ct. 240, 27 L.Ed. 171] (1882)]. Judicial interference would surely be harmful if the government were dispossessed of its military bases and equipment during an emergency. [K. Davis, Administrative Law Text 498 (3d ed. 1972)].

This Court is persuaded that, if the plaintiff's arguments were accepted, the plaintiff could, although it disavows any intention of doing so, interfere with the execution of important Federal actions. In reaching the above conclusion, this Court has not ignored the provision, in Section 118 of the Act, that "[t]he President may exempt any emission source of any department, agency, or instrumentality in the executive branch from compliance with such a requirement if he determines it to be in the paramount interest of the United States to do so . . . ." The foregoing provision does not dispel the possibility that the plaintiff's permit powers, if applied to the defendants, might seriously interfere with important Federal functions. First, Section 118 limits the President's authority to grant an exemption to situations where the President has "requested such appropriation [for air pollution control] as a part of the budgetary process and the Congress shall have failed to make available such requested appropriation." Moreover, the President is not empowered to grant exemptions with respect to new stationary sources. It is readily apparent, therefore, *that Section 118 does not grant the President sufficient authority to sweep aside all interference with vital Federal functions which may arise if the plaintiff were allowed to impose its permit power on the defendants*. The rationale supporting sovereign immunity in this case is, therefore, undiminished.

With respect to the question of whether Congress has waived the sovereign immunity of the United States, only a brief examination of the statutes relied upon by the plaintiff, with the exception of the Clean Air Act, is necessary.

28 U.S.C. Section 1331 has never been construed as a waiver of the sovereign immunity of the United States from suit. *E. g.*, Anderson v. United States, 229 F.2d 675 (C.A.5, 1956); Cotter Corporation v. Seaborg, 370 F.2d 686

---

8. The sovereign immunity doctrine is also applicable to the Union Carbide Corporation since the Complaint herein only concerns Union Carbide's role as a contractor whose actions are subject to the direction and control of the Atomic Energy Commission. See Carson v. Roane-Anderson Co., 342 U.S. 232, 236, 72 S.Ct. 257, 96 L.Ed. 257 (1952); United States v. Boyd, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964).

(C.A.10, 1966). Moreover, the Declaratory Judgment Act, 28 U.S.C. Sections 2201, 2202, is procedural in nature and does not enlarge the jurisdiction of the district courts or waive the sovereign immunity of the United States. *E. g.*, White v. Administrator of General Services Admin., 343 F.2d 444 (C.A.9, 1965); Donnely v. Mavar Shrimp & Oyster Co., 190 F.2d 409 (C.A.5, 1951). As has been decided on many occasions, 28 U.S.C. Section 1361 did not waive sovereign immunity since it was only intended to ease the burden of proceeding against officials formerly suable only in the District of Columbia. *E. g.*, Jarrett v. Resor, 426 F.2d 213 (C.A.9, 1970); Carter v. Seamans, 411 F.2d 767 (C.A.5, 1969). Although the plaintiff also invokes the Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States, it is settled beyond doubt that constitutional provisions have no effect upon the sovereign immunity from suit. *E. g.*, Lynch v. United States, 292 U.S. 571 (1934).

The plaintiff also cites the Administrative Procedure Act, 5 U.S.C. Section 703 et seq. In the Sixth Circuit, the A. P.A. is not deemed an independent grant of jurisdiction or a waiver of sovereign immunity. Sierra Club v. Hickel, 467 F.2d 1048, 1054 (C.A.6, 1972),[9] cert. den. 411 U.S. 920, 93 S.Ct. 1545, 36 L. Ed.2d 313.

■ We now arrive at the critical question concerning waiver of sovereign immunity: whether Congress intended, by enacting the Clean Air Act, to waive the Federal Government's immunity from a suit attempting to compel officers in charge of Federal installations to obtain state permits for equipment which discharges pollutants into the ambient air. The plaintiff contends that, by enacting Section 118 of the Clean Air Act, 42 U.S.C. sc. 1857f, Congress waived the sovereign immunity of the United States. Section 118 does not expressly waive the sovereign immunity of the Federal Government. The plaintiff has attempted to overcome the absence of express language concerning waiver by quoting from the debate on the House and Senate versions of the Clean Air Act of 1970. Putting aside the small weight which is usually given to debate on the floor in resolving questions of statutory interpretation, the debate upon which the plaintiff relies simply does not address the question of whether Congress intended that Federal installations must submit permit applications to states which have incorporated a permit provision in their implementation plans.

■ In two sections of the Clean Air Act, Congress provided judicial remedies and, in so doing, waived the sovereign immunity of the United States. Sections 304 and 307; 42 U.S.C. sections 1857h–2 and 1857h–5. It is axiomatic, however, that a waiver of sovereign immunity is coextensive with the remedies which Congress provided. That Congress did not provide a remedy with respect to the Government's decision that a state permit need not be obtained must be carefully noted.

For the reasons discussed above, it is obvious that Congress did not unequivocally waive the sovereign immunity of the United States from suits attempting to compel its officers to obtain permits from state agencies before discharging, from Federal facilities under their control, substances into the ambient air.

■ It has been settled law since McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), that by virtue of Article VI, clause 2 of the Constitution there is an entire absence of power on the part of the states to subject instrumentalities of the Federal government to state regulation or control. And, as said in Mayo v. United

9. After thoroughly reviewing the relationship of the A.P.A. to the doctrine of sovereign immunity, the Fourth Circuit also concluded that "the doctrine of sovereign immunity applies independently of the judicial review provisions of the APA." Littell v. Morton, 445 F.2d 1207, 1213 (C.A. 4, 1971).

States, 319 U.S. 441, 63 S.Ct. 1137, 87 L.Ed. 1504 (1943):

> This freedom is inherent in sovereignty . . . where . . . Congress does not *affirmatively declare its instrumentalities or property subject to regulation* or taxation, *the inherent freedom continues* [pp. 447–448, 63 S.Ct. pp. 1140–1141].

An intention by Congress to depart from this long settled principle *cannot be inferred or implied.* In the words of the Supreme Court, there must be a *"clear* congressional mandate." Kern-Limerick, Inc. v. Scurlock, 347 U.S. 110, 122, 74 S.Ct. 403, 98 L.Ed. 546 (1954). "[C]annot be implied but must be unequivocally expressed." United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).

If the Congress intended such a mandate in the present situation, we must assume that it would have said so *plainly,* as it has done when it did so intend.[10]

Since the plaintiff has not shown an "unequivocal waiver" of sovereign immunity, its arguments concerning waiver are not persuasive.

### PROCEDURAL ASSERTIONS

The TVA defendants additionally raised two procedural defenses:

(1) Whether the Attorney General of Kentucky had the power to maintain this action absent the request and consent of the Kentucky Air Pollution and Control Commission, and

(2) Whether the action, which purports to be a Class Action on behalf of "all citizens, counties, political subdivisions and agencies of the Commonwealth of Kentucky," is maintainable as a Class Action.

For the benefit of our judicial superiors on appeal we wish to clearly express our reaction to the above that they might have before them laid out cold our entire reaction, thus:

■ As to No. (1) above. The dispute centers around the meaning of KRS 224.991, which provides in part as follows:

> (2) It shall be the duty of the Attorney General, *upon the request of the commission* . . . to bring an action for an injunction against any person . . . violating or threatening to violate any order or determination of the commission . . . .
>
> \*   \*   \*   \*   \*   \*
>
> (4) The authority herein vested in the Attorney General, *upon request of the commission,* to bring actions for injunctions . . . shall be exclusive.

It is undisputed that no such request has been made by the Commission, and that, in fact, TVA was engaged in discussions with the Commission concerning TVA's interpretation of Section 118 at the time this action was filed. The Attorney General admits that the General Assembly can restrict his authority to bring actions, but contends that KRS 224.991 is not such a restriction. He contends that the statute merely makes it his duty to bring actions upon the Commission's request, but does not expressly prohibit him from bringing actions without such a request. Although the matter is not free from doubt, the Court is inclined to agree that in the circumstances of this case, the Attorney General can maintain the action without a request from the Commission.

---

10. See for example, section 10 of the Federal Control Act, (40 Stat. 456 (1918), which provides in pertinent part:

"That carriers while under Federal control shall be subject to all laws and liabilities as common carriers, whether arising under State or Federal laws or at common law . . . . Actions at law or suits in equity may be brought by and against such carriers . . . and in any action at law or suit in equity against the carrier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the Federal Government."

See also section 304 of the Clean Air Act, 42 U.S.C. § 1857h-2 (1970).

As to the Class Action assertion, the TVA defendants maintain that this action cannot be brought as a Class Action. The Court agrees. KRS 224.-991(4) provides:

> The authority herein vested in the Attorney General . . . to bring actions for injunctions for violations of KRS 224.310 to 224.460 or of *any regulation*, or order issued thereunder, *shall be exclusive.* Nothing herein contained shall abridge the right of any person to recover actual compensatory damages resulting from any such violation.

Such language clearly shows the intention of the Kentucky General Assembly to debar actions for *injunctive* relief from alleged violation of Commission regulations to *all* entities in Kentucky *except* the Attorney General acting on behalf of the Commission, who has "exclusive" power to seek such relief. Moreover, any duty to obtain a permit under these regulations is owed *only to the Commission*, not to "all citizens, counties, political subdivisions and agencies of the Commonwealth." There are no questions of law or fact common to the alleged class, and plaintiff is not a member of the class sought to be represented. The action is not a proper class action under Rule 23, Fed.R.Civ.P.

Plaintiff seeks to justify a class action on the basis of Section 304 of the Clean Air Act, 42 U.S.C. § 1857h–2, which provides in part:

> Except as provided in subsection (b) of this section, any person may commence a civil action *on his own behalf*
> . . . .

Not only does this statute not provide for class actions, but its legislative history expressly states that such actions are prohibited. Section 304 originated in S. 4358, 91st Cong., 2d Sess. (1970). The Senate Committee Report on that section states:

> *Section 304 does not authorize a "class action."* Instead, it would authorize a private action by any citizen or citizens acting ·in their own behalf [S.

Rep. 91–1196, 91st Cong., 2d Sess. 38 (1970)].

This section pertaining to citizen suits was adopted by the Conference Committee and was enacted into law as Section 304 of the Clean Air Act. Accordingly, this action cannot be maintained as a class action under either Rule 23 or the Clean Air Act.

Accordingly, the Court is of the opinion that all motions of all defendants for summary judgment are due to be granted, and plaintiff's motion for summary judgment is due to be denied. A separate judgment to such effect will be entered herewith.

So ordered.