In the Matter of the ESTATE of Dora SOUDER, Deceased.

INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION, Appellant (Petitioner Below),

v.

Mary A. EVANS, Personal Representative of the Estate of Dora Souder, Deceased, Appellee (Respondent Below).

No. 3–1080A311.

Court of Appeals of Indiana, Third District.

May 27, 1981.

Linley E. Pearson, Atty. Gen., Herbert L. Allison, Deputy Atty. Gen., Indianapolis, for appellant.

Benton E. Gates, Jr., Gates & Gates, Columbia City, for appellee.

STATON, Judge.

Dora Souder executed her will on March 18, 1967 and died on May 14, 1979. The sole surviving beneficiary under that will is Mary Evans, who had been married to a son of Dora Souder. The son had died before March 18, 1967. After execution of the will but prior to Dora Souder's death, Mary Evans remarried.

The sole issue upon appeal is whether Mary Evans qualifies as a "Class B transferee" under the Indiana inheritance tax statutes. Ind. Code §§ 6–4.1–1–1 et seq. (1976 & Supp.1980). IC 6–4.1–1–3 provides in pertinent part that " 'Class B transferee' means a transferee who is a . . . widow . . . of a child of the transferor."

The Indiana Department of State Revenue, Inheritance Tax Division contends Mary Evans does not qualify as a "widow" under this statute since she had remarried. Mary Evans contends the subsequent remarriage of a "widow of a child of the transferor" has no effect upon such classification. The trial court found for Mary Evans and we affirm.

When a court is called upon to construe a statute, it must first decide whether the statute is unclear and ambiguous so as to warrant construction. *Indiana State Highway Comm'n v. White* (1973), 259 Ind. 690, 291 N.E.2d 550. Whether the event of

remarriage affects the classification of "widow" is unclear. Whether the widow of a decedent's child is still that child's widow upon remarriage for inheritance tax purposes is ambiguous. Therefore, the meaning of widow in the context of the inheritance tax statute is unclear and ambiguous. Judicial interpretation of statutory language is warranted where the meaning is unclear and ambiguous. *Livingston v. Consolidated City of Indianapolis* (1979), Ind. App., 398 N.E.2d 1302; *Hilligoss v. LaDow* (1977), Ind.App., 368 N.E.2d 1365.

■ The cardinal principle of statutory construction is to ascertain and effectuate the general intent of the Legislature. *Matter of Wisely's Estate* (1980), Ind.App., 402 N.E.2d 14; *Economy Oil Corp. v. Indiana Department of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215. When called upon to interpret statutory words or phrases, we do not look solely upon the isolated word or phrase but upon the statute and act as a whole. *Livingston v. Consolidated City of Indianapolis, supra.* As stated by the Supreme Court in *Indiana State Highway Comm'n v. White, supra:*

> "[W]hen we are called upon to construe words and phrases in a single section of a statute, we must construe them together with the other parts of the same section and with the statute as a whole. They must be construed in harmony with the intent the Legislature had in mind, in order that the spirit and purpose of the statute be carried out."

259 Ind. at 695, 291 N.E.2d at 553.

■ Under IC 6–4.1–2–1, the "inheritance tax is imposed at the time of a decedent's death on certain property interest transfers made by him." Under IC 6–4.1–8–1 the transferee is personally liable for the tax. The statute here in issue, IC 6–4.1–1–3, provides: [1]

> "(a) 'Class A transferee' means a transferee who is a surviving spouse, lineal ancestor, or lineal descendant of the transferor.

"(b) 'Class B transferee' means a transferee who is a:

> "(1) brother or sister of the transferor;
>
> "(2) descendant of a brother or sister of the transferor; or
>
> "(3) spouse, widow, or widower of a child of the transferor.

"(c) 'Class C transferee' means a transferee who is neither a Class A nor a Class B transferee."

The "Class" of the transferee is important for two reasons: First, under IC 6–4.1–5–1, the rate of the inheritance tax is determined by the "Class" of the transferee. Secondly, under IC 6–4.1–3–10, –11, & –12, the amount of exemption from inheritance tax is determined by the "Class" of the transferee.

The clear intent of the Legislature is to favor Class A transferees over both Class B and Class C transferees, and to favor Class B transferees over Class C transferees. For example, the initial tax rates and the tax exemptions, respectively, for each "Class" are as follows: Class A = 1% and $2,000; Class B = 7% and $500; and, Class C = 10% and $100.

Clearly, the Legislature intended to favor certain "Classes" by lower tax rates and greater exemptions. Equally clear is the Legislature's intention regarding the classification of the individual transferee. The "Class" is determined by the relationship between the transferee and the deceased transferor. For example, if the relationship of the transferee to the transferor was lineal ancestor or descendant, the transferee is in Class A. Or, for example, if the relationship of the transferee to the transferor was sister or brother or child of such sister or brother, the transferee is in Class B.

It logically follows the meaning of "widow of a child of the transferor" under the same statute is determined by the relationship of the transferee to the deceased transferor. We therefore hold that the "widow of a child of the transferor" describes the

---

1. Effective July 1, 1979—subsequent to the death of Dora Souder—this statute was amended to read:

> "(a) 'Class A transferee' means a transferee who is a lineal ancestor or lineal descendant of the transferor."

relationship of the transferee to the transferor rather than present marital status of the transferee. Therefore, whether the wife of the deceased son remarries is not relevant to the determination of "widow" under this statute. For inheritance tax purposes, remarriage does not change the transferee's relationship as the "widow . . . of a child of the transferor."

Addressing the same issue under their analogous inheritance tax statute, a Court of our sister state of Ohio started:

"We believe that the Legislature of Ohio, by use of the phrase 'widow of a son', . . . used the word 'widow' as being descriptive of, and the means of identifying, a certain individual woman who has lost her husband by death, rather than as referring to the unmarried statutes of such individual, and did not intend that, upon remarriage, such person would cease to be the 'widow' of her deceased husband."

*In re Waters' Estate* (1951), 63 Abs. 34, 38, 101 N.E.2d 815, 818. *Accord, In re Rhead's Estate* (1939), 288 Mich. 220, 284 N.W. 706.

Though not in the context of inheritance tax statutes, we note other jurisdictions have found the statutory term "widow" to describe the relationship between individuals rather than identifying an individual under certain statutory classifications. In so finding, each jurisdiction held the subsequent remarriage of the "widow" to not be relevant. *Davis v. Neal* (1911), 100 Ark. 399, 140 S.W. 278 ("widow" under homestead exemption statute referred to person rather than to present marital status); *Georgia Railroad & Banking Co. v. Garr* (1875), 57 Ga. 277, 24 Am.Rep. 492 ("widow's" statutory action against employer of husband for homicide of husband); *Duckett v. Kansas Soldiers' Compensation Board* (1937), 145 Kan. 520, 66 P.2d 410 ("widow" under compensation act is a person not a mere status); *Mathews v. Marsden* (1924), 71 Mont. 502, 230 P. 775 ("widow's" statutory election to take one-half of husband's estate); *Application of Dell 'Aquila* (1950), 277 App.Div. 54, 97 N.Y.S.2d 812 ("widow" under statutory veteran's bonus refers to

person not condition or present marital status); *Waters v. Harrell* (1945), 183 Va. 764, 33 S.E.2d 194 ("widow" under wrongful death act refers to the person and not to the present marital status or condition of the woman).

And finally, we feel that had the Legislature intended "widow" to mean a widow not remarried, it would have specifically so limited the classification. *Buckett v. Kansas Soldiers' Compensation Board, supra; Application of Dell 'Aquila, supra.*

In summary, we quote at length the most pertinent language from a New York case addressing a similar issue under their inheritance tax statutes.

"[W]e are confronted with the definitions of the word 'widow' as stated in the various dictionaries, to wit: 'An unmarried woman whose husband is dead;' 'one who has lost her husband by death, and who has not taken another;' 'whose husband is dead, and who remains unmarried,'—and by the argument, based on these definitions, that in order to be a widow she must remain unmarried. The question at issue is not whether these definitions are correct, but what is the legal import, meaning, effect, and object of the words 'wife or widow of a son,' or 'husband of a daughter,' as these words are used in this and other statutes of this state, or, if the language made use of to express the intention of those who prepared and passed the law is not clear, what construction will best accomplish the design. The fact that the statute itself has not made remarriage during the lifetime of the ancestor a bar to exemption from the tax is some evidence that it was not so intended to operate, for in many cases such persons would have a family to support which would be benefited by the exemption, and this fact may have been one of the reasons that influenced the legislature to adopt this provision. Again, a legacy would not ordinarily be given to the 'widow' of a son, or to the 'husband' of a deceased daughter, were it not for the fact that the relation of son-in-law or daughter-in-law contin-

ued or was supposed to 'exist by legal fiction, if not in fact. A woman, though the wife of another, is still the widow of her former husband; though married to another. woman, the husband is still the widower of his former wife; and, this being so, both come, not only within the language of the law, but within its just and reasonable construction."

*In re Ray's Estate* (1895), 13 Misc.Rep. 480, 484–85, 35 N.Y.S. 481, 484.

We affirm the trial court.

HOFFMAN, P. J., and GARRARD, J., concur.