**CITY OF HENDERSON POLICE & FIREMAN PENSION BOARD & City of Henderson, Ky., Appellants,**

v.

**Doris S. RILEY, Appellee.**

Court of Appeals of Kentucky.

March 16, 1984.

Discretionary Review Denied by Supreme Court Sept. 7, 1984.

Steven D. Gold, Sheffer, Hoffman, Neel & Wilson, Henderson, for appellants.

Joseph E. Ternes, Jr., and Kenton Watson, West, Ternes, Gibbs & Overfield, Henderson, for appellee.

Before CLAYTON, LESTER and MILLER, JJ.

CLAYTON, Judge.

This is an appeal from a Declaratory Judgment of the Henderson Circuit Court determining the appellee, Doris S. Riley, to be a "widow" for purposes of the police and fireman's pension fund provisions of KRS 95.624(3)(c), and awarding her $16,622.60 in unpaid accrued pension benefits, and $397.67 per month, plus interest.

Riley is the widow of Ben Goad, Jr., a former City of Henderson police officer who died April 13, 1976, after serving approximately ten (10) years on the City of Henderson (a third class city) Police Department, and ten (10) years on the City of Henderson Fire Department, for a total of approximately twenty (20) consecutive years in employment governed by the pension provisions of KRS 95.624. From April 14, 1976, through March 16, 1978, she received pension benefits from the Board in the amount of $397.67 per month, amounting to a total of $9,186.18 by the date of her remarriage on March 17, 1978. Benefits were terminated on that date and Riley has received none since.

On April 7, 1980, approximately three months after her remarriage was dissolved by divorce, she applied for reinstatement of those benefits and was denied them by the Board. In response, Riley filed a petition in the Henderson Circuit Court for a declaratory judgment to determine her right to receive such benefits. It is from that judgment that the City of Henderson Police and Fireman Pension Board (Board) and City of Henderson (City) now appeal.

The Board and the City argue that Riley is not a "widow" within the confines of KRS 95.624(3)(c). In sum, their position is that the term must be given its usual and ordinary meaning which, according to Black's Legal Dictionary, is "a woman whose husband is dead and who has not remarried." Thus, according to this dictionary approach, the word "widow" refers to a terminable marital status. To have remained a widow, and retained her benefits, Riley was required to remain indefinitely unmarried after the death of her qualifying spouse.

Riley responds that "widow" as applied in the statute merely designates the person to receive benefits. Thus, a woman surviving a qualified employee, while not entitled to benefits during the period she remains remarried, becomes so entitled following the termination of her remarriage by death or divorce.

Having examined the well-drafted arguments of both parties, and the authorities supporting those arguments, we are convinced that the language of KRS 95.-624(3)(c) requires the resumption of benefits to the surviving spouse of a qualified former employee, upon the termination of that surviving spouse's remarriage. Therefore, Riley did not cease to be the widow of Ben Goad, Jr., simply because she remarried following his death. Upon the termination of her remarriage by divorce she again became entitled to pension benefits as a "widow, while unmarried" under KRS 95.624(3)(c). Were she to again remarry at some later date, she would again become entitled to pension benefits following the termination of that subsequent remarriage. This result is supported by a majority of decisions construing the term "widow," and by the legislative draftsmanship and purposes of KRS 95.624(3)(c). We turn first to the task of construing the term "widow."

## I.

Unfortunately, KRS Chapter 95, City Police and Fire Departments, does not define the term. Nor has any Kentucky court decision been found which interprets it. The only statutory definition of "widow" found in the Kentucky Veteran's Bonus Statute, KRS 40.010(9)(a), is, of course, inapplicable as it appears in a totally unrelated chapter of the Revised Statutes. While one opinion of the Attorney General has construed the similar language of KRS 95.-550(1)(c) in accordance with the appellant's position, we are not bound by this construction. It is nothing more than an unexplained single sentence declaration which suspiciously resembles the text of Corpus Juris Secundum. *See* 70 C.J.S. *Pensions* § 4(b) (1951). We mention this only because it is raised in the appellant's brief. *See* O.A.G. 82–67.

Looking instead to the judicial authority of foreign jurisdictions, we find that Riley's interpretation of the term "widow" receives full support in a substantial line of decisions, beginning in 1895 with the landmark case, *In re Ray's Estate*, N.Y., 13 Misc.Rep. 480 (1895), and continuing until 1981 in *Matter of Estate of Souder*, 421 N.E.2d 12 (Ind.App.1981).

The first of these decisions, *Ray's Estate, supra,* involved the interpretation of an inheritance tax statute exempting "the husband of a daughter" from transfer tax. Under the facts of that decision, the son-in-law of a deceased testatrix had by her will been named beneficiary to a substantial estate. The state of New York sought to hold the son-in-law liable to a transfer tax arguing that he was not "the husband of a daughter" within the statute in that his wife, the former daughter of the testatrix, had predeceased the testatrix. After interpreting the term "husband" to include a widower, the court was faced with the state's argument that based upon the dictionary definition of "widow," the son-in-law was no longer a widower as he had remarried prior to the testatrix's death. We quote at length the court's eloquent response:

"[W]e are confronted with the definitions of the word 'widow' as stated in the various dictionaries, to-wit:
'an unmarried woman whose husband is dead;' 'one who has lost her husband by death, and who has not taken another;' 'whose husband is dead, and who remains unmarried,'—and by the argument, based on these definitions, that in order to be a widow she must remain unmarried. The question at issue is not whether these definitions are correct, but what is the legal import, meaning, effect, and object of the words 'wife or widow of a son' or 'husband of a daughter' as these words are used in this and other statutes of this state, or, if the language made use of to express the intention of those who prepared and passed the law is

not clear, what construction will best accomplish the design. The fact that the statute itself has not made remarriage during the lifetime of the ancestor a bar to exemption from the tax is some evidence that it was not so intended to operate ... A woman, though the wife of another, is still the widow of her former husband; though married to another woman, the husband is still the widower of his former wife; and, this being so, both come, not only within the language of the law, but within its just and reasonable construction. The law invests them with the name of 'husband' or 'wife' or 'widow' for certain legal purposes, and under these names, although the designation may not come within the definition of the dictionary property may vest in them, whether it comes to them by legacy or otherwise. Notwithstanding the definitions of the words 'wife', 'widow', and 'husband', the statutes of this state, which make use of these words, whether correctly or not, to designate persons entitled to certain legal rights."

*In re Ray's Estate*, 13 Misc.Rep. 480, 484–85, 35 N.Y.S. 481, 484 (1895).

The next occasion for judicial interpretation of the term "widow" arose in *Duckett v. Kansas Soldiers Compensation Board*, 145 Kan. 520, 66 P.2d 410 (Kan.1937). In *Duckett* the question was whether "a soldier's widow who has remarried can collect the compensation due the deceased soldier which was not paid to him in his lifetime." *Id.* at 411. After refusing to adopt a marital status definition of widow, the court set out at length a substantial number of decisions holding the term "widow" to designate the person. For the sake of brevity we shall not review each of these opinions, but instead shall reiterate the *Duckett* court's analysis that,

[T]hey do show a general attitude of the courts to hold that the term "widow" indicates a person, not the mere status of such person. The general policy of the law is favorable to marriage, and it is not for the courts to put a strained construction on a statute which would penalize remarriage. If the Legislature had in-

tended that her remarriage should strip the widow of what would otherwise be her right, it could have said so. *Duckett, supra* at 413.

A statement to similar effect can be found in the third decision in the *Ray's Estate* line of cases, *Application of Dell'Aquila*, 97 N.Y.S.2d 812 (N.Y.App. 1950), *aff'd*, 98 N.E.2d 588 (1951). This decision, as in *Duckett*, involved the entitlement of a remarried widow to the Veteran's bonus benefits of her deceased first husband. In determining the legislative intent in using the term "widow," the court examines both *Ray's Estate* and *Duckett* concluding that,

In the absence of a specific provision that a widow who remarries loses her rights as widow, the great weight of authority throughout the country is in favor of interpreting the term "widow" in statutes as designating the person and not the continued marital status of that person. *Application of Dell'Aquila, supra,* at 815.

Finally, as recently as 1981, the Court of Appeals of Indiana has chosen to adopt Riley's interpretation of "widow" in *In re Estate of Souder*, 421 N.E.2d 12 (Ind.App. 1981), holding that remarriage does not change a transferee's relationship as "widow ... of a child of the transferor" for the purposes of Indiana inheritance tax. *Id.* at 14.

These four decisions are clear and direct in their choice of the appellee's position. Each considers and rejects the dictionary-type, marital status definition of widow. Moreover, they are only a small part of a much larger body of similar court decisions also construing "widow" to be a statutory reference to a specific person. *See In re Rhead's Estate*, 288 Mich. 220, 284 N.W. 706 (1939) (containing numerous citations to other decisions supporting appellee's interpretation); *Holland v. State*, 146 Fla. 308, 200 So. 695 (1941).

In the face of this authority, the Board and City refer the Court to provisions of American Jurisprudence and Corpus Juris

Secundum expressing the view that remarriage of a woman receiving a pension as a widow has generally been held to terminate her pension rights. 60 Am.Jur.2d *Pensions and Retirement Funds* § 59 (1972); 70 C.J.S. *Pensions* § 4(b) (1951). Looking behind that editorial opinion, however, we find very little judicial substance. None of the three opinions cited by the Board as applying the Black's Law Dictionary definition of "widow," reveals that it fully considered the choice between a marital status definition and a reference to person construction. *See United States v. Michaelson*, 58 F.Supp. 796 (D.C.Minn.1945); *Alabama Pension Commission v. Morris*, 242 Ala. 110, 4 So.2d 896 (Ala.1941); *State ex rel. Williams v. Cone*, 143 Fla. 452, 196 So. 820 (1940).

The court in *Michaelson, supra,* does not even mention the dictionary definition of widow. The bulk of *Michaelson* is spent reviewing evidence of the defendant's common law marriage. *Michaelson, supra,* at 797–800. In *Morris, supra,* the court provides no explanation of why the dictionary meaning of "widow" is superior to any other meaning. The turning point in *Morris* rests on the unique legislative history of the statute involved rather than a dictionary definition of widow. Likewise, in *Cone, supra,* the crux of the decision is not focused upon a dictionary definition of widow, but upon the constitutionality of a special act to confer benefits upon a remarried widow. Absent judicial authority of a more persuasive nature, we cannot accept the appellant's contention that a majority of judicial decisions supports its position.

## II.

■ The Court now turns to examine the legislative draftsmanship and purpose of KRS 95.624(3)(c) in light of generally accepted principles of statutory construction. Giving the phrase, "widow while unmarried," its usual and commonly accepted meaning, it appears to us that the phrase is simply the legislature's reference to the surviving spouse of a qualified employee during the periods she is not married. Otherwise, the latter portion of the phrase, "... while unmarried," would be unnecessary and redundant. If widow were to be construed as the Board argues, "a woman whose husband is dead and who has not remarried", there would be little purpose in including the final words, "while unmarried," since the definition inherently implies this limitation. The more natural explanation of this portion of the phrase is that "while" is used as a conjunctive so that during the periods a widow is not remarried she is entitled to pension benefits. We cannot accept *State ex rel. Fouche v. Verner,* 30 S.C. 277, 9 S.E. 113 (1889), as authority for the Board's construction, as *Verner* interprets the separate phrase "widow while she *remains* unmarried," and focuses on "remains" to deny a remarried widow benefits. Clearly this case is not applicable.

Furthermore, had the legislature wished to permanently extinguish a widow's right to benefits upon remarriage it could have employed language expressly effecting such a result. The fact that it has expressly terminated benefits upon remarriage in KRS 95.860(1) and KRS 95.861, while refusing to employ such language in KRS 95.624(3)(c), convinces us that it did not intend such restrictions under KRS 95.-624(3)(c).

■ Both KRS 95.860(1) and KRS 95.861 appear in KRS Chapter 95 on City Police and Fire Departments, the same chapter as KRS 95.624(3)(c), and both deal with police and firefighters retirement funds for cities of the second class. Under KRS 95.860(1) the surviving widow of a member of the police or fireman's fund who died due to occupational causes is entitled to an annuity "payable *until* she dies or remarries." KRS 95.860(1) (our emphasis). Similarly, in the case of widows of members who did not die in the performance of duty, KRS 95.861 provides that, "the widow's annuity *will terminate* in any event *when the widow remarries*." KRS 95.861(1)(c) (our emphasis). Thus, the legislature has chosen to explicitly terminate widows' pension benefits upon remarriage in two similar stat-

utes. That it did not include such explicit and compelling language in KRS 95.-624(3)(c) indicates to us that it did not intend such a limitation. This view is in accord with well-known principle of statutory interpretation that "[W]here a particular provision appears in a statute, the failure to include that same requirement in another section of the statute will not be deemed to have been inadvertent." *Commonwealth of Kentucky ex rel. Hancock v. Ruckelshaus*, 362 F.Supp. 360 (W.D.Ky. 1973), aff'd, 497 F.2d 1172, *Cert. granted Hancock v. Train*, 420 U.S. 971, 95 S.Ct. 1390, 43 L.Ed.2d 650 aff'd, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (citing 2 J. Sutherland, Statutory Construction § 4915 [3rd ed. 1943]).

■ The Board argues that to refuse to permanently terminate pension benefits of remarried widows in third class cities unconstitutionally discriminates against widows in second class cities, whose annuity benefits are expressly terminated by KRS 95.860(1) and KRS 95.861(1)(c) upon their remarriage. This argument ignores the pre-existing legislative distinctions between these two separate classes of widows. Widows in cities of the second class are, by legislative intention, more restricted in qualifying for pension benefits. This different treatment is evident in that widows of cities of the second class: must have been married to the qualifying employee for at least one year prior to his death; the qualifying employee must have had at least three years service; and the widow must be at least 45 years old (or be totally disabled or have a minor child by the deceased employee) before she can recover pension benefits. KRS 95.861(1)(c). For widows in cities of the third class there is no one year minimum period of marriage before receiving benefits; the qualified employee need only have served one year prior to death; and the widow need not be 45 years old before she may begin receiving benefits. KRS 95.624(3)(c).

■ Given these differences, the fact that we choose to treat remarriage as having different consequences for widows in cities of separate classes should have little constitutional impact. The constitutionality of legislative distinctions on the basis of different classes of cities has repeatedly been upheld. *Cf. Commonwealth ex rel. Hancock v. Davis*, Ky., 521 S.W.2d 823 (1975); *Pinchback v. Stephens*, Ky., 484 S.W.2d 327 (1972). Furthermore, "[T]he fact that a statute discriminates in favor of a certain class does not render it unconstitutional if the discrimination is founded upon a reasonable distinction or if any state of facts reasonably can be conceived to sustain it." *Kentucky Milk Marketing and Anti-monopoly Commission v. Borden Company*, Ky., 456 S.W.2d 831, 835 (1970).

■ Constitutionality aside, the Board next argues that adoption of Riley's interpretation would defeat the purpose of KRS 95.624(3)(c) by overcompensating widows already provided for upon termination of their remarriage under will or property settlement and maintenance provisions. Were the purpose of KRS 95.624(3)(c) solely to provide replacement income for surviving spouses of qualifying employees, we might be inclined to agree. Pension statutes, however, such as KRS 95.624(3)(c) are also designed to enhance the recruitment and retention of qualified personnel. *See Maybury v. Coyne*, Ky., 312 S.W.2d 455 (1958). Knowing that one's spouse will be protected during the periods of time she is unmarried is a strong recruitment incentive for many police and firefighters. This additional incentive could prove well worthwhile in the smaller cities of the third class where, due to smaller labor pools, recruitment may well be more difficult.

Moreover, we consider the appellants' speculations concerning actuarial stress and possibility of double benefit payment to be too remote for extended discussion. The legislature's refusal to include in KRS 95.624(3)(c) the clear limitations upon remarriage found in 95.860(1) and 95.861(1)(c) is itself strong evidence that it also thought these fears to be of little consequence. *See Ruckelshaus, supra.*

### III.

Having disposed of the major question presented we now turn to the final issue of this appeal. By its Judgment and Amended Judgment of June 27, 1983, and July 11, 1983, the Henderson Circuit Court granted Riley pre-judgment and post-judgment interest plus court costs. The Board maintains these awards were made in clear violation of KRS 95.620(1) which provides that,

"Except as provided in subsections (2), (3) and (4) of this section, the policemen's and firefighter's pension fund in cities of the third or fourth class shall be held and distributed for the purpose of paying pensions and benefits, and *for no other purpose.*" KRS 95.620(1) (appellants' emphasis).

We do not agree.

 We have long held in Kentucky "that interest runs as a matter of right on a liquidated demand, and, in the case of an unliquidated claim, the allowance of interest rests in the discretion of the jury or the court trying the case." *Middleton v. Middleton,* 287 Ky. 1, 152 S.W.2d 266 (1941). The prohibition of KRS 95.620(1) was not intended to defeat this right but was instead aimed at preventing the abuse of pension funds through mismanagement or fraud. Under KRS 360.040, Riley is properly entitled to interest, such money being merely compensation for the use of pension funds erroneously denied her. Along the same lines, Riley's costs were in effect funds properly expended to establish her right to benefits. Thus both her costs and interest are directly related to the payment of benefits, and payment thereof does not constitute a violation of KRS 95.620(1). This result is in accord with the policy providing that pension statutes are to be liberally construed to effect their beneficient purposes.

The judgment of the Henderson Circuit Court is affirmed.

LESTER, J., concurs.

MILLER, J., dissents.

MILLER, Judge, dissenting.

My interpretation of KRS 95.624(3)(c) requiring the payment of a pension "to the widow, while unmarried" is that the pension is terminated upon remarriage and not restored upon dissolution of the remarriage by divorce. The question before us is not whether the pension is terminated upon remarriage. The statute so provides. This no doubt is in contrast to many pensions which because of their nature are not terminated upon remarriage. We are here concerned with whether a pension can be restored or revived when a subsequent marriage is terminated by divorce. This problem is not addressed by the statute. There is no doubt that the legislature could have opted not to terminate pension payments upon remarriage; or to terminate payments, but cause their restoration in the event of termination of the remarriage. Since the statute provided for the former, but as we have heretofore stated, failed to address the latter, it is for us to decide whether termination of a remarriage by divorce entitles a recipient to restoration of payments. It is sufficient to say that we find no case for restoration of pension after a subsequent marriage is terminated by divorce. 60 Am.Jur.2d *Pensions and Retirement Funds* § 59 (1972). There are cases where *annulment* of a remarriage was held to entitle a widow to resumption of pension payments. I believe the historical distinction between annulment and divorce is sufficient to permit a resumption of pension after annulment, but deny payments after a remarriage is terminated by divorce. *Cf.* Annot. 85 A.L.R.2d 242 (1962). To allow such would create an impermissible stress upon the pension system. Had the legislature intended the pension system to bear this additional burden it could have easily so provided in the applicable statute.

For the foregoing reasons I would reverse the decision of the Henderson Circuit Court.